## THE STATE v. J. H. MILLER, Appellant.

### Division Two, December 12, 1905.

1. **RAPE: Indictment.** An indictment for rape which charges that defendant, "her, the said May Morrison, then and there unlawfully, forcibly and against her will, feloniously did ravish and carnally know," sufficiently alleges that the person ravished was a female.

2. **CHALLENGING GRAND JURY: Right of Defendant in Jail.** It is not the duty of the court to bring in, of its own volition, a defendant who is confined in jail awaiting the action of the grand jury, in order that he may make his challenges to such jury, but it is the business of the defendant to know of the grand jury's being impaneled, and if he desires to challenge the jury, or any member of it, it is his duty to apply for leave or request permission to appear and do so. And when he fails to do this, a motion to quash the indictment on this ground is properly overruled.

3. **CONSPIRACY: Evidence: Practice.** It is permissible for the State to prove the declarations and acts of one of the parties to

a conspiracy made and done in the absence of the others, before proving the conspiracy, provided the conspiracy is afterwards proved.

4. ————: **Husband and Wife: Establishing Relation: Excluding Evidence.** If defendant desired to have evidence excluded on the ground that it consisted of statements of a woman who was his wife, it was incumbent on him to demand the right to show the fact of marriage preliminary to his objection to the evidence. And where no such step is taken and no such proof is made, and there is no testimony which would justify the jury in so finding, the evidence should not be excluded on the ground that the relation of husband and wife was established by mere casual references by the prosecuting attorney in his statement and by the prosecutrix in her testimony, where there is no evidence that either had any knowledge that such relation actually existed.

5. **RAPE: Sufficiency of Evidence.** The evidence in this case, which was a prosecution for rape, is examined, and held sufficient to justify a verdict of guilty.

6. ————: **Outcry and Complaint.** The failure of the prosecutrix to make outcry and immediate complaint raises no presumption of law that she has sworn falsely, but it is simply a circumstance of more or less weight, depending upon the situation and surroundings of the parties, to be submitted to and weighed by the jury.

Appeal from Saline Criminal Court.—*Hon. John A. Rich*, Judge.

AFFIRMED.

*J. F. Barbee, Frank Rigney* and *R. M. Reynolds* for appellant.

(1) There can be no conspiracy between a husband and wife to commit a crime. State v. Miller, 162 Mo. 253. (2) If there could be such a thing at law as a conspiracy between a husband and wife to commit a crime, still, the conspiracy is a matter first to be shown before the acts, declarations or statements of the alleged co-conspirator can be given in evidence. State v. Kennedy, 177 Mo. 131; State v. Walker, 98 Mo.

95. (3) In this case there was no conspiracy shown to exist, in fact, for any purpose, and it was error to admit the conversations, conduct and statements of defendant's wife. (4) While it may be the province of the jury to say whether or not in fact a conspiracy existed, yet they are not to be permitted to do so in the absence of competent and sufficient evidence therefor; and it is the duty of the court to see that there is sufficient evidence for such a finding before evidence is heard touching the acts of the alleged co-conspirator, or submits the same to the jury. State v. Kennedy, supra. (5) Defendant's peremptory instruction in the nature of a demurrer at the close of the State's case, requiring a verdict of not guilty, should have been given. The evidence did not disclose a rape. All the ear-marks by which such an offense is distinguished were absent, and all the facts given in evidence negative and repel any other idea or conclusion than that all that was done by the defendant and prosecutrix was by the consent of prosecutrix. State v. Burgdorf, 53 Mo. 65; State v. Patrick, 107 Mo. 147; State v. Huff, 161 Mo. 459; State v. Primm, 98 Mo. 368; State v. Prendible, 165 Mo. 329.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The indictment was sufficient in form and substance, and similar ones have been approved by this court. State v. Armstrong, 167 Mo. 262; State v. Harris, 150 Mo. 50; State v. Warner, 74 Mo. 84; State v. Burries, 126 Mo. 565; R. S. 1899, sec. 1837. (2) Defendant's motion to quash the indictment because of his inability to challenge the grand jurors—he being in jail—was properly overruled. This very point has been recently passed on by this court, and adversely to defendant's claim. State v. Taylor, 171 Mo. 475. (3) The order of the introduction of statements of

one of the conspirators is within the discretion of the trial court; provided, of course, that there is evidence tending to show that a conspiracy existed, as there was in this case. State v. Walker, 98 Mo. 103; State v. True Nell, 79 Mo. App. 246. The evidence tending to show such a conspiracy was ample. (4) The rule does not require that the woman shall do more than her age, strength and the attendant circumstances make it reasonable for her to do in order to manifest the opposition. Eberhart v. State, 134 Ind. 655; State v. Cross, 12 Iowa 69; Barker v. State, 40 Fla. 187; Vasser v. State, 55 Ala. 265; 2 Bishop on Crim. Law, 939; State v. Daugherty, 63 Kan. 480. (5) Defendant's instruction 6 was properly refused. This court has held, and the same rule applies in other States, that a failure to make complaint is a circumstance from which the jury may infer that no rape was committed; but that the weight of that circumstance is a question for the jury. State v. Witten, 100 Mo. 529; State v. Hammond, 77 Mo. 159; 2 Wigmore on Evidence, p. 1335; 1 Greenl. on Evidence, sec. 469c; 3 Chity's Crim. Law, 812; State v. Gyrne, 47 Conn. 467; Turner v. People, 33 Mich. 383; Hill v. State, 5 Lea (Tenn.) 732; State v. Knapp, 45 N. H. 155; State v. Niles, 47 Vt. 87; Polson v. State, 137 Ind. 523; Underhill on Crim. Evid., p. 470; People v. Glover, 71 Mich. 303; People v. Knight, 43 Pac. 6; Higgins v. People, 58 N. Y. 379; State v. Marcks, 140 Mo. 656; State v. Boyd. 178 Mo. 19.

GANTT, J.—On March 18, 1904, the grand jury of Saline county returned into the criminal court of Saline county the following indictment:

"State of Missouri, County of Saline, ss.

"In the criminal court of Fifteenth judicial circuit within and for the county of Saline, March term, 1904.

"State of Missouri against J. H. Miller, defendant.

"The grand jurors for the State of Missouri, summoned from the body of Saline county, being duly impaneled, charged and sworn to inquire within and for the county of Saline, upon their oath present and charge that on the 8th day of March, 1904, at the county of Saline, in the State of Missouri, defendant, J. H. Miller, then and there in and upon one May Morrison, unlawfully, violently and feloniously, did make an assault, and her, the said May Morrison, then and there unlawfully, forcibly and against her will, feloniously did ravish and carnally know, against the peace and dignity of the State."

At the same term, and before pleading to the indictment, the defendant filed a motion to quash the said indictment on the ground that at the time the grand jury was sworn and impaneled he was in the Saline county jail and was not represented by counsel and that the aforesaid grand jury found this indictment against him; that had the court brought him into court at the impaneling, swearing and charging of the grand jury which returned this indictment, he would have challenged one Joseph Lineberry of Cambridge township, where the alleged offense was committed, for the reason that he was unable to investigate the charge preferred against this defendant in an impartial and unbiased manner on account of the bias and prejudice he held against defendant. As another ground for quashing said indictment he alleged that one William Fenwick was discharged from the grand jury and one John Rhoades was put upon said grand jury instead of said Fenwick; that at the time of the substitution of said Rhoades on the grand jury, the defendant was still in jail and not brought into court and permitted to challenge said grand juror; that if he had known and been permitted to make challenge, he would have challenged the said Rhoades on account of bias and prejudice of said Rhoades against him.

This motion was heard by the court and overruled. Thereupon, the defendant was arraigned and entered his plea of not guilty to the indictment, and the case was continued until the second day of May, 1904, at which last-mentioned date the defendant was put upon his trial and found guilty of rape and his sentence assessed at ninety-nine years in the State penitentiary. In due time he filed his motion for a new trial, which was heard, considered and overruled by the court. Thereupon, the defendant was sentenced to the penitentiary according to the verdict of the jury. From that sentence he appeals to this court.

The evidence on behalf of the State tended to prove that the prosecutrix was a girl fifteen years of age who resided with and kept house for her father in the town of Slater, Saline county. Her father was a shoemaker and was also a vendor of newspapers. There were two younger children in the family, a little sister by the name of Lucile and a boy by the name of John. On or about the 29th of February, 1904, a woman, claiming to be the wife of the defendant, visited the home of the prosecutrix several times for the ostensible purpose of renting a room in the house. During these visits this woman talked to the prosecutrix about taking a trip with her and the defendant up into Iowa. This proposition the prosecutrix at first declined to entertain, but, after several visits, the prosecutrix began to consider the proposed trip and had several conversations with the woman and the defendant. The woman agreed to purchase some clothing for the prosecutrix and had her go with her to a dressmaker, all of which was done without the knowledge of the father of the prosecutrix. It seems that the prosecutrix had relatives living in or near Oskaloosa, Iowa, and it was to this point the woman and defendant proposed to take her with them. One of the reasons given by the prosecutrix why she could not go in the first instance was that she had no suitable clothing.

Thereupon, the woman proffered to provide her with the necessary clothes, and urged her to go with them, and the prosecutrix then agreed to make the trip with them. In returning to her home from the business portion of the city one evening, about eight o'clock, the defendant said to the prosecutrix that that night would be the best chance to go and she must go on the "Hummer," a train on the Chicago & Alton Railroad. This the prosecutrix declined to do, because she had her younger sister, Lucile, with her, and she would not leave her on the streets alone. Thereupon, the defendant called the woman, who passed as his wife, to one side and had a talk with her, and, after this, he said to the prosecutrix that his wife had told him all about their projected trip, and that this night would be their best chance to get away. It was then agreed between them that the defendant's wife and prosecutrix would take the little sister home, and the prosecutrix and defendant's wife would go to bed and pretend to go to sleep. After the other members of the Morrison family had retired, the woman and the prosecutrix quietly slipped out on the porch, put their shoes on and met the defendant, who carried their bundles across the street, and all three of them got into a buggy. They drove about six miles in the direction of Marshall, and, as they traveled along, defendant said to prosecutrix: "You do not want to get scared; for if anybody runs onto us, I have a pistol and will let the bullets fly." When they reached a point on the road about two miles from any house and near an old straw stack, the defendant stopped the buggy and said that they had better get out there and wait until the moon came up. The prosecutrix objected to waiting and to getting out of the buggy, but the defendant urged her to go over with his wife to the straw stack. After they reached the straw stack, the woman and the prosecutrix sat down on the lower part of the straw, and

the defendant climbed up above them and sat down. After sitting up there a while alone, the defendant came down and sat down by the prosecutrix and took hold of her arm and pushed her back on the straw. She asked him what he meant. He said: "Nothing, I am not going to hurt you." She said to him: "You must not do that," and appealed to the woman to know what he meant. At this the woman said, "He is not going to hurt you." Thereupon, prosecutrix, resenting his conduct, said: "This is not right; I am not going to do it; I want to go home." To this the defendant said: "What do you think about May?" (alluding to the woman) "She does it." The girl said: "I am not going to." He said: "All girls have to do it." And she said: "I am not going to." To this he said: "You are." Thereupon, he got mad and cursed the woman and said: "Why did you tell me a lie?" Prosecutrix then appealed to the woman to know if she had told him that she would do such a thing, to which she did not make any answer, save to say, "He is not going to hurt you." Thereupon, the woman appealed to the girl not to make him mad; that he had a terrible temper, and again said to her: "He will not hurt you;" and, again, the girl said she was not going to do it. He then proceeded to say that he knew girls that had got killed by refusing. Thereupon, the girl said she would go home. The woman then said to defendant, "I think May will do it; I think I can manage her." At this the defendant seized the prosecutrix and threw her over on the straw, saying, "I will do it." She testified that she resisted him and kept trying to push him off, but he succeeded in having intercourse with her; that she had never at any time consented to it. After the defendant succeeded in having intercourse with her under these circumstances, they all three again got into the buggy and drove all that night. Afterwards, while traveling along the road, defendant pointed to a house and told the prosecutrix that

that was where two girls got killed for not doing such things as she had refused to do; and that was the way they treated girls sometimes. And he also pointed to a clump of bushes where, he said, another girl had her throat cut for not doing it. He warned her not to tell anybody of what had occurred or they would put her in jail. After traveling all the next day, the defendant, the woman and the prosecutrix stopped at the house of some negroes, Ras Granger and wife, where they cooked supper and stayed all night. The defendant told the negroes that the woman was his wife and the girl was his daughter; but refused to tell his name. The house contained two rooms and a shed for a kitchen; so defendant, the woman and the prosecutrix occupied the same room and slept in the same bed that night. The negro man and his wife both testified that the prosecutrix seemed to be in great trouble and that the defendant and the woman, one or both of them, remained close to her all the time. After traveling all the next day, they stopped at the house of Mr. and Mrs. Haynie, not far from Miami. The defendant introduced the prosecutrix to Mr. and Mrs. Haynie as his sister, and again the three occupied the same room and the same bed. On both of these nights the defendant had sexual intercourse with the prosecutrix, she begging and pushing him away, but being afraid to cry out. Near Miami, the deputy sheriff intercepted them, arrested all three of them and took them to Marshall. Arriving at that city, the prosecutrix detailed the foregoing story to the prosecuting attorney, Mr. Lynch, and to her father. Two physicians made an examination of her the day she was brought back, and found her private parts swollen and tender, the mucous membrane bleeding, lacerated and torn. They both gave it as their opinion that she had very recently had sexual intercourse. While on the way with him to Marshall, after his arrest, the defendant stated to the officer that he had met this woman and girl out walk-

ing near Cow Creek, and that they all just went along to where her people were working on a farm, and that they then started to go to Iowa. The officer testified that he noticed the prosecutrix when he first came up with the party, and she was greatly worried. The defendant did not offer any evidence. And, thereupon, the court instructed the jury as follows:

"1. The court instructs the jury that the defendant in this case is charged with the crime of rape, alleged in the indictment to have been committed upon one May Morrison, at the county of Saline, in the State of Missouri, on the 8th day of March, 1904.

"And the jury are instructed that if they believe from the evidence in this case, and beyond a reasonable doubt, that the defendant on the 8th day of March, 1904, at the county of Saline, in the State of Missouri, did forcibly ravish the said May Morrison, they will find the defendant guilty as charged, and assess his punishment at death, or imprisonment in the penitentiary not less than five years, in the discretion of the jury. By the term, 'forcibly ravish,' as used above, is meant the carnal knowledge of a woman by a man, forcibly and against her will.

"If the jury believe from the evidence in this case there was any element of consent, or a passive submission, on the part of May Morrison to sexual intercourse with the defendant, at the time and place charged, in either instance not enforced by violence, or induced by fear or intimidation, then he is not guilty as charged, and the jury should so find; and in ascertaining whether the defendant had sexual intercourse with May Morrison at the time and place charged, by violence or fear, or by consent of the said May Morrison, the jury should take into consideration all the facts and circumstances adduced in evidence.

"The court instructs the jury that rape is carnal knowledge of a female, forcibly and against her will, and where threats of personal violence are made to

overcome her will, and she believes that her person is in great danger from such threats, and is induced thereby to submit to the will of the person making such threats, and he has sexual connection with her under such circumstances, then the law considers such carnal knowledge as having been forcibly had and against the will of the female. And if the jury in this case believe from the evidence in this case that the defendant compelled the prosecuting witness by threats of personal violence to submit her person to him in sexual intercourse against her will, and that she submitted through fear of great violence or death, then the jury should find the defendant guilty of rape as charged in the indictment and assess his punishment at death or imprisonment in the penitentiary for not less than five years, in the discretion of the jury.

"4. The court instructs the jury that if they believe from the evidence in this case that the defendant compelled the prosecuting witness by threats of personal violence to submit her person to him in sexual intercourse and against her will, and that she submitted through fear of great violence or death, then the jury should find the defendant guilty as charged in the indictment, even though the jury should further believe from the evidence that the prosecuting witness did not offer the utmost resistance to the defendant at the time of said act of sexual intercourse.

"5. The court instructs the jury that although they may believe from the evidence in this case that the prosecuting witness did not make any outcry on the straw stack at the time she claims defendant ravished her, and did not make any complaint of the defendant having ravished her until a few days thereafter, yet if the jury further believe from the evidence in this case that the prosecuting witness had good reason to believe it would have been useless and dangerous for her to make any outcry on said straw stack at the time she claims she was ravished, and for that

reason did not make any outcry, and that she made complaint of having been ravished as soon thereafter as she had suitable opportunity to do so, and that the reason she did not make complaint any sooner was because she was under the duress of the defendant caused by his threats, then the jury under those circumstances should consider such facts in explanation why prosecuting witness did not make any outcry, and why she delayed making such complaint.

"6. The court instructs the jury that if they believe from the evidence that the defendant threatened the prosecuting witness or by any means placed her under fear of death or of great violence to her person so that her will was overcome, and that by reason of her fear so caused she did not make any outcry at the time she claims she was ravished, and did not resist her ravisher with all of her power and did not make complaint for several days after the time she claims she was ravished, then such fear so produced overcomes the presumption that she consented, arising from her failure to make outcry and her failure to make complaint and her failure to use all of her power in resisting her assailant.

"7. The court instructs the jury that, if they have a reasonable doubt of defendant's guilt, they should acquit him; but such a doubt to authorize an acquittal should be a substantial doubt, arising from all of the facts and circumstances detailed in evidence, and not a mere possibility of defendant's innocence."

To the giving of which instructions on behalf of the State, counsel for the defendant then and there duly excepted. At the request of the defendant, the court gave the following instructions to the jury:

"1. The court instructs the jury that the indictment in this case is a mere formal charge and furnishes no evidence of defendant's guilt, and is not to be considered by the jury in arriving at their verdict in this case.

"2. The court instructs the jury that the law clothes the defendant with the presumption of innocence which attends and protects him until it is overcome by testimony which proves his guilt beyond a reasonable doubt, which means the evidence of his guilt as charged must be clear, positive and abiding, fully satisfying the minds and consciences of the jury, and it is not sufficient in a criminal case to justify a verdict of guilty that there may be strong suspicion or even strong probabilities of guilt, nor is it sufficient that the greater weight or preponderance of the evidence supports the allegation of the indictment; nor is it sufficient that upon the doctrine of chance it is more probable that the defendant is guilty than that he is innocent, but in order for a conviction the law requires the proof by legal and credible evidence of such a nature that where it is all considered it produces a clear, undoubting and entirely satisfactory conviction of defendant's guilt, and the burden of establishing the guilt of defendant as above required is on the State, and if the jury can as readily say from the evidence that the defendant is innocent as well as they could say he was guilty, then in such case it would not be sufficient evidence on which to convict defendant, then it would be the jury's duty to give him the benefit of the doubt and acquit him.

"3. The court instructs the jury that before conviction can be rightfully had in this case every material allegation in the indictment must be proven to the satisfaction of the jury, and the jury must be convinced beyond a reasonable doubt of defendant's guilt, by which is meant must be convinced of his guilt to a moral certainty, and it is not sufficient in this case that the jury may believe from all the evidence considered together that the defendant had sexual intercourse with the said May Morrison, and that he used force in having said sexual intercourse, but it must also appear from the evidence that in addition to accomplish-

ing his intercourse with her by force that it was against her will and without the slightest consent whatever upon her part, but that she manifested the utmost reluctance and greatest resistance to said intercourse of which she was capable, before the jury can find the defendant guilty.

"4. The court instructs the jury that the crime of rape consists of three elements, either of which is as necessary as the other to the commission of such offense, and unless all three elements are present and concur there can be no rape.

"First: There must be an assault and sexual intercourse, that is, a penetration of the female organs by the male organ.

"Second: This penetration must be by force and against the will of the female.

"Third: It must be without any consent whatever upon the part of the female, and the utmost reluctance must be manifested and the greatest resistance offered by the female to the acts of the male, and it is not sufficient in this case that the State prove to the satisfaction of the jury that the defendant made an assault upon one May Morrison and the existence of one or more of said elements, but before the State can be entitled to a conviction of the defendant under the indictment of the crime of rape, it must prove and the burden of proof is upon it to show to the satisfaction of the jury beyond a reasonable doubt the existence of all such elements. [Said instruction number four was given by the court in part, and in part refused, to which ruling of the court the defendant by his counsel then and there excepted. The remainder of said instruction will appear among defendant's refused instructions.]

"5. The court instructs the jury that it is not in any sense incumbent upon the defendant to show his innocence of the crime of rape in order to be entitled to an acquittal, but before the State is entitled to a

conviction it must show his guilt, and although the jury may believe from the evidence that the defendant assaulted one May Morrison and penetrated her private organ with his private organ and that he used force in so doing, yet the jury are further instructed that it does not devolve upon the defendant to show, in order to the acquittal of the crime of rape as charged in the indictment, that such assault and penetration was with the consent and not against the will of the said May Morrison, but the burden is on the State to show that such assault and penetration was against the will and without the consent of the said May Morrison and that she manifested the utmost reluctance and made the greatest resistance thereto, before it is entitled to a conviction. And unless it has so shown, the defendant is entitled to his acquittal, and the jury will so find.

"7. The court instructs the jury that under the laws of the State of Missouri it is incumbent upon the injured party to make complaint of such ravishment immediately or as soon after such alleged ravishment as an opportunity can be had to do so, and if the injured party fails to make such a complaint, but only revealed her ravishment in answer to interrogations propounded to her, then such facts should be considered by the jury in determining whether or not force or duress was actually used by defendant or not, or whether she consented thereto; as where one is ravished by force and against her will she will naturally make complaint at the first opportunity, and from the failure to make such complaint it may naturally be inferred that the assault and penetration was without force and with her consent.

"8. The court instructs the jury that it is one of the natural results from rape that the party being assaulted will, if she is resisting the assault and opposed to it, make an outcry as for help if others are near at the time, and if the jury believe from the evidence in

this case that May Morrison, at the time of the alleged assault, had an opportunity to make any outcry so that she could be heard by others in close proximity, then the jury should consider such facts in determining whether or not force or duress was used by defendant or not, or whether she consented thereto as naturally would be inferred that if such intercourse was by force and without her consent she would make any outcry and offer all the resistance of which she was capable.

"9. The court instructs the jury that there can be no such thing as a half-way or passive policy on the part of the injured party in order to constitute a rape of sexual intercourse, but the law requires that in order to make such intercourse rape, that the prosecutrix must have resisted the assault and penetration with all the power of which she was capable, and unless she does all the resistance of which she is capable there can be no rape, for otherwise there would be consent, and in this case although the jury may believe from the evidence that May Morrison did not give her full consent to the intercourse, yet it was her duty to resist to the fullest extent of which she was capable, and if they believe that she did not offer all the resistance of which she was capable all the circumstances considered, then there could be no rape and the verdict must be not guilty. In other words, the injured party cannot form a mental determination of opposition, and at the same time yield to physical obedience to the assault.

"10. The court instructs the jury that they are the sole judges of the credibility of the witnesses and the weight to be given to their testimony, and in determining what weight they will give to the testimony of any witness they should take into consideration the character of such witness, his or her manner on the witness stand, his or interest in the result, if any, his or her relation to or feeling for or against the defendant or prosecutrix, the probability or improbability of

his or her statement, as well as all the facts and circumstances given in evidence in the cause, and in this connection you are instructed that if you believe from the evidence that any witness or witnesses have wilfully testified falsely to any material fact in this cause, you are at liberty to disregard the whole or any portion of such witness or witnesses' testimony.''

The court refused the following portion of instruction No. 4, and instruction No. 6, asked by the defendant:

[Beginning with the comma after the word "elements," in that part of instruction No. 4, given by the court on behalf of defendant]:

4 . . . ''not only the assault but that the assault was consummated by a penetration of the private organs of said May Morrison by the defendant with his private organs by force and against the will and consent of the said May Morrison, and that she manifested the utmost reluctance and made the greatest resistance to the effort and acts of the defendant in making said assault and penetration, and unless the State has so shown to the satisfaction of the jury beyond a reasonable doubt not only that defendant made the assault as charged, but also that he penetrated her private organs with his private organ by force and against her will, and that to said assault and penetration she manifested the utmost reluctance and the greatest resistance, then it has failed to show a rape of the said May Morrison by the defendant, and the verdict must be not guilty, even though the jury may believe from the evidence that he did assault her and have sexual intercourse with her.''

6. ''The court instructs the jury that in the case of rape it devolves upon the State to show, before a conviction can be had, that the party ravished made complaint thereof immediately after being ravished or as soon thereafter as such party had opportunity to do so, and the court instructs the jury that no such

complaint by the prosecutrix has been proven in this case.''

Which instructions the court refused to give, to which refusal of the instructions thus prayed, the defendant by his counsel then and there excepted.

The motion for new trial, omitting the formal parts, is as follows:

''Now at this day comes the defendant, John H. Miller, the same being within four days after the rendition of the verdict and judgment herein, and moves the court to set aside the verdict and judgment and to grant the defendant a new trial, for the following reasons, to-wit:

''1st. Because the verdict and judgment are against the law.

''2nd. Because the verdict and judgment are against the evidence.

''3rd. Because the verdict and judgment are against the law and evidence.

''4th. Because the court erred in admitting incompetent, improper and irrelevant evidence upon the trial of this cause offered by the State, and to which the defendant at the time objected and excepted.

''5th. Because the court erred in giving instructions numbers 1, 2, 3, 4, 5, 6, for the State over the defendant's objections.

''6th. Because the court erred in refusing instructions numbers 4 and 6 asked by defendant upon the trial of the cause.

''7th. Because the court erred in refusing the instruction offered by the defendant in the nature of a demurrer at the close of the State's case.

''8th. Because the court erred in allowing the prosecuting witness to be recalled to the witness stand after the case had been closed by both State and defense and after the demurrer had been argued in her presence and hearing in the cause, and in permitting said witness to contradict her testimony given in the

case as to having made complaint of the outrage committed upon her.

"9th. Because the court erred in refusing and overruling defendant's motion to quash the indictment in the cause."

Which said motion the court overruled on the——day of May, 1904, to which ruling and order of the court the defendant then and there duly excepted.

I. The indictment is sufficient. While it does not charge specifically that the prosecutrix was a female, it does charge the defendant, "her, the said May Morrison, then and there unlawfully, forcibly and against her will, feloniously did ravish and carnally know." This point was ruled adversely to the defendant's contention in State v. Hammond, 77 Mo. 157; State v. Warner, 74 Mo. 83; State v. Armstrong, 167 Mo. l. c. 266 and 267.

II. Defendant's motion to quash the indictment because at the time the grand jury was impaneled, charged and sworn he was in the county jail and had no opportunity to challenge the members thereof, was properly overruled. Section 2487, Revised Statutes 1899, provides: "Any person held to answer a criminal charge may object to the competency of any one summoned to serve as a grand juror, before he is sworn, on the ground that he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecutor, and has been summoned or bound in a recognizance as such; and if such objection be established, the person so challenged shall be set aside." Section 2488 provides: "No challenge to the array of grand jurors, or to any person summoned as a grand juror, shall be allowed in any other cases than such as are specified in the last section." It was ruled in State v. Warner, supra, that where the accused at the convening of the term of court was in jail to answer the charge of felony, he

had a right to be present at the impaneling of the
grand jury and to make such challenges thereto as he
might see fit to make; and if he request to be present
and such request is denied, it would be considered re-
versible error. In that case counsel for the defendant,
and on the same day, and before the grand jury was
impaneled, charged and sworn, requested the court to
have the defendant brought from jail into court so
that he might be present in court and make such chal-
lenges as he might see fit, which request the court de-
nied; to which action of the court the defendant, by
his counsel, then and there excepted.  Thereupon, on
the same  day, and before the jury was impaneled,
charged and sworn, the defendant, by his counsel,
filed his motion to quash the panel on the ground that
he was a negro, and that the sheriff in summoning the
grand jury had selected no person or persons of color
or of African descent, known as negroes, but had ex-
cluded all persons of color or of African descent solely
because of their race and color.  In this case no such
request to be present at the impaneling and swearing
of the grand jury was made known to the judge of the
criminal court.  In that case the case of the People v.
Romero, 18 Cal. 89, was cited with approval by this
court.  It was said by the Supreme Court of Califor-
nia:  ''If the prisoner were refused the privilege of
challenging the grand jury in and by the court of ses-
sions, the indictment is insufficient and worthless; it is
not, in other words, a legal indictment; . . . but to
have this effect, the prisoner must have applied for
leave or requested permission to appear and challenge
the jury.  It was not the duty of the court of sessions
to bring him into court for the purpose of exercising
this privilege.  It is the prisoner's business to know
when the court meets, and if he desires to challenge the
jury, to apply, if in custody, to the court, to be brought
into court for that purpose; and if he fails to do this,
he waives his privilege of excepting to the panel or of

any member." In the subsequent case of State v. Taylor, 171 Mo. 465, the facts were just as in this case. The defendant was in jail when the grand jury was impaneled, charged and sworn, and it was said by BURGESS, J.: "But it is insisted that as the defendant was at the time confined in jail, he should have been informed of his right to challenge the array. While it is true that the defendant was at the time confined in jail, it was to answer before the grand jury for the identical offense for which he was indicted by them, and it was his business to know of their being impaneled, and that it was for the purpose of investigating offenses of a criminal character, and to prefer indictments against such offender, if they believed from the evidence before them the charges to be true, and if defendant desired to challenge the array or any member thereof, it was his duty to have applied for leave or requested permission to appear and do so, but it was not the duty of the court to have him brought into court of its own volition in order that he might exercise this privilege. [People v. Romero, 18 Cal. 89.]" In Dobson v. State, 17 S. W. 3, under a statute in the same language as section 2487, in the Supreme Court of Arkansas the same conclusion was reached. In Barkman v. State, 52 S. W. 69, the Court of Criminal Appeals of Texas held that if the defendant desired to challenge any member of the grand jury he should have made formal request to those in charge of him; he should have made a formal request to the judge and not to the jailer; and if he did not have access to the sheriff, he should have made this request to the judge through the jailer; and it was held that not having done so, he had waived his privilege of challenging the grand jury. Accordingly, it must be ruled that no error was committed in refusing to quash the indictment for the grounds alleged in the motion to quash.

III. During the examination of the prosecutrix, the prosecuting attorney inquired if she had any conversation with the woman known as Mrs. Miller in regard to a trip that she was going to take to Iowa. To this question the counsel for defendant objected to any statement made by the woman, Mrs. Miller, until there had been proof of a conspiracy to commit rape; not merely evidence of a conspiracy, but a conspiracy to commit rape; and because there could be no conspiracy between husband and wife, such a conspiracy was unknown to the law. As to the first of these objections, the prosecuting attorney had outlined to the court and jury the character of the evidence by which he expected to establish the common design and conspiracy to lure and entice the prosecutrix, a girl of fifteen, from the home of her father and despoil her. A conspiracy can seldom be established by direct and positive evidence. The prosecution may prove the declarations and acts of one made and done in the absence of the others, before proving the conspiracy, provided the proof is afterwards made. [State v. Ross, 29 Mo. 32; State v. Daubert, 42 Mo. 239; Wharton's Crim. Ev. (8 Ed.), sec. 698a; State v. Wm. Walker, 98 Mo. l. c. 104; 1 Bishop's Crim. Law, sec. 634.] The order of the testimony is largely in the discretion of the trial court. We think there can be no doubt there was abundant evidence in this case of a conspiracy, and also of a conspiracy to rape the prosecutrix if necessary. The further objection was predicated on the assumption that the woman known as Mrs. Miller, and who made the first overtures to the prosecutrix to leave her father's home and offered her the inducements to go with her and defendant, was the wife of defendant; but at the time this objection was made there was absolutely no proof that such a relation existed between her and defendant. It is true the woman was alluded to as the wife of defendant by the prosecutrix, but when we scrutinize her evidence it is clear

it was a mere assumption on her part that they were man and wife. The prosecutrix did not testify to any fact which can be tortured into proof of a marriage in fact, or indeed a general reputation that a marriage existed. Neither did the defendant, for the purpose of excluding the evidence on that ground, offer any preliminary proof that the woman, Mrs. Miller, and defendant were husband and wife, nor was such a relation stipulated by counsel to exist. On the contrary, when defendant was on the way to Marshall, under arrest, he said to the deputy sheriff that he bought the horse and buggy, and drove out on Cow Creek, and there met these women, the Miller woman and prosecutrix, thus indicating that he never knew either of them prior to the starting on that trip. In addition to this, if the testimony of the prosecutrix is true, and there is not a word contradicting it, the conduct of the woman at the straw stack, where the outrage was committed, was contrary to all the natural instincts of a wife, in that, she not only made no objection to this alleged husband's having intercourse with another female in her presence, but was a *particeps criminis* in the outrage. Her conduct was that of a guilty procuress and not that of a wife.

In Seiler v. People, 77 N. Y. 411, a woman was separately indicted for stealing a piece of cloth. The evidence disclosed that the prisoner was in company with another woman and two men, one of whom gave his name as Brown, the other, as Miller. The two women and Miller entered the store while Brown remained in the street from 200 to 300 feet from the store. The two women came out of the store followed by Miller; they joined Brown, and one of the three gave Brown some article which he wrapped in a piece of paper. They were arrested and the cloth found upon Brown. The prisoner stated she was unmarried and did not know the others. On the trial evidence was

191 Sup—39

given on her part to the effect that Brown was her husband. The defense was coercion of her husband, Brown, and counsel for defendant prayed the court to instruct the jury "that the relation of husband and wife was proven to exist between the defendant and the man called Brown," but the court refused to so charge. Discussing the refusal of this instruction, the court of appeals said: "The proof of marriage was not conclusive and uncontradicted. There was testimony which, if relied upon by the jury, was enough to uphold a verdict that the plaintiff in error was married, and that the man who went by the name of Brown was her husband. But there was testimony the other way. It consisted in her declaration that she was not his wife. . . . It was for the jury to say." Now, in this case, there was no evidence by any witness that he or she was present at the marriage of defendant and the woman, Miller, nor did it appear how long they had resided in Slater, or that they were generally reputed to be husband and wife and cohabited together as such. Without committing ourselves to the position that the latter would be sufficient where the marriage is relied on, as in this objection, as a defense, it seems to us that the mere casual references by the prosecuting attorney and the prosecutrix to the defendant as the husband of the woman, or the woman as the wife of defendant, in the light of the evidence showing that neither had any knowledge that they were actually husband and wife, did not establish such a relation. When, then, the question was propounded as to the statement of the woman, the objection that they were husband and wife and therefore could not be guilty of a conspiracy was without any basis in the evidence. If they were not married, clearly it amounted to nothing. If it was to be relied upon to exclude the evidence on that ground, it was incumbent on defendant to demand the right to show that fact preliminary to his objection. No such step was taken and no

such proof made, and we think until a marriage was established or at least testimony which would have justified the jury in so finding, the objection was not well taken. But we think the admission of the testimony as to the inducements held out to the prosecutrix to go on the trip to Iowa were not prejudicial to the defendant in view of the fact that before any overt act was taken in pursuance of the woman's solicitations and machinations, the defendant met the prosecutrix and added his solicitations to those of the woman, and told prosecutrix that the woman had told him all about the proposed trip to Iowa and advised her to go that night on the "Hummer," and when she declined this proposition, arranged with the woman to go to the home of prosecutrix and pretend to go to sleep, and then appeared in the alley with the buggy and horse and took her away to the place where he committed the outrage. In a word, everything the woman had done was clearly the result of his own scheming and in furtherance of his own criminal purpose.

IV. The defendant's request for an instruction directing an acquittal was properly denied. The case made by the State was amply sufficient to authorize a conviction of rape. There was no evidence of consent to the outrage. The law does not require that the assaulted woman, in this case an unprotected child completely at the mercy of a brutal villain, should do more than her age, strength and the attendant circumstances made it reasonable for her to do. An outcry in that field, two miles from any dwelling, would have done no good whatever. Besides she knew by that time she was in the power of an armed man, who was receiving the aid and assistance of the equally guilty woman. Neither does the fact that she made no complaint to the old negroes the next night entitle defendant to an acquittal. Their evidence shows that she was constantly under the surveillance of the defendant and the

woman while at the negroes' house, and evidently she was afraid to make a complaint. The fact that she did not make complaint until she reached Marshall and told her father and the prosecuting attorney was properly submitted to the jury. [State v. Marcks, 140 Mo. 656; State v. Boyd, 178 Mo. 19; Higgins v. People, 58 N. Y. 379.]

V. The instructions given by the court of its own motion were correct and left nothing to be desired. No error was committed in refusing instruction No. 6, prayed by defendant. It was not authorized by the evidence, as we have already said. The part of instruction 4, asked by defendant, was fully covered by the other instructions. The instructions given for defendant were in our opinion far too favorable to him, particularly those numbered 7, 8 and 9. They seem to indicate that an outcry is a necessary essential of the proof of this crime, whereas the failure of such outcry is simply a fact tending to disprove the good faith of the charge, a circumstance only of more or less weight depending upon the surrounding circumstances; a failure to make it raises no presumption of law that the prosecutrix has sworn falsely; it is a circumstance to be weighed by the jury. [State v. Marcks, 140 Mo. 656, l. c. 661 and 662.] And so, also, of the delay in making complaint.

These instructions are objectionable in the form in which they are couched, but being more favorable to defendant than they ought to have been, of course he cannot complain. The record discloses a most revolting crime. There was ample evidence to support the verdict, and the judgment is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.