STATE of Missouri, Respondent,

v.

Robert SWINDELL, Appellant.

No. 43941.

Supreme Court of Missouri.

Division No. 2.

Sept. 13, 1954.

Rehearing Denied Oct. 11, 1954.

534 ■

———◆———

Roy Coyne, Joplin, for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

Robert Swindell has been found guilty of forcible rape and sentenced to seventeen years' imprisonment. The information appropriately charges, in the language of the statute, that Swindell and Olin Ray Ward forcibly ravished Hazel Weil, in Jasper County on the 4th day of April 1952. Section 559.260 RSMo 1949, V.A.M.S. The verdict is in proper form, responsive to the information and issues, there was allocution and the sentence and judgment comply with the statutes, and, aside from matters required to be presented and preserved in a motion for a new trial, there is no error upon the record. Section 547.270 RSMo 1949, V.A.M.S.; 42 V.A.M.S. Supreme Court Rule 2802; Sections 546.550, 546.-560, 546.570 RSMo 1949, V.A.M.S.; 42 V.A.M.S. Supreme Court Rules 27.08, 27.09.

■ Swindell and Ward denied that they ravished Hazel, in fact they denied that they saw her on April 4, 1952. They claimed and their evidence tended to show that at the time they were supposed to have been with Hazel, between 7 and 9:15 o'clock, they were in and out of Ward's apartment at 1001 Howard Street, Carthage, and the East Side Pool Hall. Between 6:15 and 7 o'clock Hazel was on her way to Carthage from Webb City. Just outside Carthage, near the 66 Drive-In Theater, Hazel thought she had a low tire and stopped to inspect it. As she stopped on the shoulder another car drove up and stopped and two men, Swindell and Ward, got out and looked at the tires and agreed with Hazel that one of the tires was low and that she should not drive on the low tire. She told them she was in a hurry and they agreed to drive her into Carthage to a garage. Hazel was casually acquainted with Ward and accepted their offer of assistance. She got in the front seat between Swindell and Ward, but instead of driving into Carthage, Swindell drove out onto a side road. As they passed Carthage Hazel began to scream and Ward held her. When the car was stopped Hazel got out on Ward's side of the car and ran but Swindell caught her and threw her into the back seat. He slapped, choked and beat her and had Ward drive on about a mile, and when the car was again stopped continued choking, threatening and beating her and finally, over her protests and screams, ravished her as did Ward. They returned her to her automobile and she drove to her mother's where she reported the incident and was taken to a hospital. In some respects Hazel was corroborated by the testimony of others. A highway patrolman drove up as Hazel got in the car with Swindell and Ward and inquired whether she was in trouble and she told him about the low tire and said that they were taking her to a garage. He saw the car turn north off onto a gravel road. The patrolman later identified Swindell's 1940 or 1941 maroon Plymouth sedan with its "white-mud flaps." In these and the circumstances to be noted further, the evidence was sufficient to sustain the charge. State v. Cardello, Mo., 130 S.W.2d 498.

■ While Swindell was in custody, at the county jail, on the morning of the 5th, Grover Smith, assistant chief of police, asked him if he had seen this girl the night before and "he said he brought this girl down, just picked her up as she was having trouble with the car, brought her in down to the Dixcel Station there at Oak and Garrison and dropped her off in front of the station." It is objected in the motion for a new trial that the court erred in admitting this testimony in evidence because the defendant had been arrested, was in

custody, and had not been advised of his rights, afforded counsel or warned that anything he might say could be used against him. The officer was examined as to whether he had warned Swindell that anything he said could be used against him and he said that he had. There was no objection or claim, however, that Swindell's statement was involuntary and the mere fact that he was in custody and without counsel does not render the statement involuntary, and, in the circumstances of this case, there was no error in admitting the statement. State v. Pippin, 357 Mo. 456, 209 S.W.2d 132; State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523; 22 C.J.S., Criminal Law, § 822, page 1441.

■ Hazel, in testifying, related what Ward said during the course of the evening. In addition, in explanation of her acquaintance with Ward, she said that he had asked her about her husband on several occasions, inquiring where he was and when he was coming home. It is objected in the motion for a new trial, since there was a severance as to Ward, that the court erred in admitting in evidence conversations between Ward and Hazel, some of which were not in the appellant's presence. In the first place, the only objections were "I object to anything Ward said in this case. He is not the defendant," and "Now, if the Court please, I am objecting to all this line of testimony—what Ward did, because he is not on trial in this case," or, "Let the objection show we make this objection throughout this examination as to anything Ward might have done." But aside from the specific insufficiency of the objections, a conspiracy between Ward and Swindell to rape Hazel is a reasonable inference from all the facts and circumstances and it was not necessary that they be jointly charged and tried to show the conspiracy. State v. Sykes, 191 Mo. 62, 78–79, 89 S.W. 851, 855; State v. Miller, 191 Mo. 587, 608, 90 S.W. 767, 774. A conspiracy being a reasonable inference from the evidence, the statements by Ward were properly admissible in evidence upon the trial of this case. State v. Harrison, 263 Mo. 642, 657–658, 174 S.W. 57, 62;

State v. Lorton, Mo., 274 S.W. 383; State v. Miller, supra.

■■ Hazel, in testifying, without objection described her injuries sustained in the ravishment: "Mostly in the left side of my face, underneath the eyebrows. My nose wasn't out of place but it was so bruised that it looked out of place. My whole ear was blue where he had beaten it. Then I had scratches and scars all over my neck where he had choked me." When Hazel's father testified he described her condition when she arrived home, including her scratches and bruises. As he testified he was handed two photographs of Hazel, exhibits A and B, and asked whether they correctly showed the scratches and bruises. It was then objected, "The Exhibit shows for itself," and "I object to him testifying to them until the Court has properly introduced them." When the deputy sheriff, who took the photographs, testified, the court excluded the exhibits and they were not offered in evidence. In the motion for a new trial it is objected that the prosecution undertook to introduce the exhibits in evidence and permitted the witnesses to refresh their memories from the exhibits and in so doing the prosecuting attorney so handled the photographs that they were seen by the jury "showing her face spotted with mercurochrome, and which did not show her true facial expression * * *." The record does not support the assignment that the pictures were seen by the jury, and the statement in the motion that they were seen may not be accepted upon this appeal. State v. Jacobson, 348 Mo. 258, 265–266, 152 S.W.2d 1061, 1066, 138 A.L.R. 1154. The court exercised its discretion, State v. Morris, Mo., 248 S.W.2d 847 and excluded this cumulative evidence, annotation 159 A.L.R. 1413, 1425, and there was no prejudicial error in connection with the exhibits.

It is objected in the motion for a new trial that the court erred in refusing to discharge the jury because on "numerous occasions" Hazel became hysterical, that the demonstrations on her part were "deliberately planned and executed for the

purpose of prejudicing the jury" and that on one occasion she made the statement "I am going to have a baby" which "undoubtedly" was heard by the jury. In part the assignment is not borne out by the record. On the first occasion it does not appear just what Hazel did except that as she was relating the occurrence the prosecuting attorney said, "Now, Mrs. Weil, just collect yourself. Take it easy." Whereupon defense counsel, instead of making an objection, said, "We object to this show before the Court and the jury. The defendant charges it is just put on and the same procedure as she put on in the Magistrate Court and it is done purely for the purpose of prejudicing the jury and nothing else." After some colloquy the state's attorney said, "We haven't put this into evidence, but she is now four months pregnant by her husband." Finally, the court admonished Hazel to compose herself and said, "There is no way for the Court to determine whether anything is affecting her or not, but it is a matter for the jury to determine whether or not she is posing and I can't tell what causes it." Up to this point there was no objection requiring affirmative action by the court and there was no request for any action on the part of the court.

▮ Subsequently, when she was detailing her ravishment, state's counsel said, "Now, Mrs. Weil, attempt to compose yourself. Mrs. Weil, what is the state of your health at this time?" Answer: (Given in a whisper) "I am going to have a baby.") Defense counsel said, "I object to what the state of her health is at this time." The court sustained the objection and defense counsel said, "Defendant objects to the show that this witness is now putting on before the jury." The court said, "You will have to get yourself under control." Defense counsel asked for a recess, which was granted and then said, "I ask at this time that the jury be discharged because of the said actions and conduct of the witness before the jury." In ruling on the motion and counsel's additional objection to her statement that she was going to have a baby the court said,

"The Court will state that the remark mentioned by counsel was not heard by the Court nor anyone at the counsel table, so far as the Court knows, *nor by anyone except the reporter herself.* There is nothing to indicate the witness deliberately made the statement which was not heard. Therefore, the motion to discharge the jury will be overruled." Defense counsel stated that neither the court nor counsel could "state whether some of the jurors did not hear the remark." Thereafter Hazel's examination in chief and her entire cross-examination proceeded without further incident. As to her statement, in response to the prosecuting attorney's question and evidently in explanation of her conduct, this court is bound to accept as the fact the court's record recital that her whispered answer was not heard by anyone other than the court reporter. State v. Marlin, Mo., 177 S.W.2d 485, 487. The appellant's motion states that Hazel became "hysterical" on numerous occasions. The record does not clearly reveal just what she did on the two described occasions, but the inference is that she was weeping. The record does not indicate loud or prolonged weeping or "hysteria." Of course all emotional outbursts should be prevented as far as possible and if sufficiently or obviously inflammatory may so deprive a defendant of a fair trial as to require the granting of a new trial, State v. Connor, Mo., 252 S.W. 713, 722, but in this instance it may not be said that this experienced trial court abused its discretion in not discharging the jury by reason of Hazel's weeping on the two occasions. State v. Cox, 172 Minn. 226, 228, 215 N.W. 189; State v. Murphy, 292 Mo. 275, 295–300, 237 S.W. 529, 536–538; 23 C.J.S., Criminal Law, § 970, page 298.

Upon voir dire examination of the jurors the prosecuting attorney inquired of the panel whether they had any scruples against the death penalty. During the examination defense counsel made this objection, "We object to this line of cross-examination; in the first place the prosecuting attorney examined them on the death sentence and then in the next breath he says

'If the death sentence is not asked for would you then go according to the law and if you find the man guilty assess punishment against him.' We object to his first qualifying them for the death sentence and then in the next breath stating he may not ask for the death sentence and we ask at this time that this panel be discharged because of the prejudicial remarks made by the prosecuting attorney to this panel." There was considerable colloquy between court and counsel and it was pointed out that the inquiry "might have the effect upon them that they realize the seriousness of it more than if you had not asked about it." Finally the prosecuting attorney announced that he did not intend 'to ask for the death penalty, the court restricted counsel to the general question whether the jurors would follow the law and the instructions of the court, excluding further specific questions concerning the death penalty, and the voir dire examination was completed without further objection. This incident is complained of in the appellant's motion for a new trial as prejudicial and depriving him of a fair trial.

The statute, Section 559.260, provides that every person convicted of rape by forcibly ravishing any woman of the age of sixteen years or upward "shall suffer death, or be punished by imprisonment in the penitentiary for not less than two years, in the discretion of the jury." In this connection, "Persons whose opinions are such as to preclude them from finding any defendant guilty of an offense punishable with death, shall be ineligible to serve as jurors on the trial of an indictment or information charging any such offense, *unless such disqualification is waived by the representative of the state when selecting the jury in any such case*." Section 546.130 RSMo 1949, V.A.M.S. In addition to the complained of voir dire examination, the court instructed the jury, in the language of the rape statute, that if they found the defendant guilty as charged "you will assess his punishment at death or imprisonment in the State Penitentiary for any length of time you deem proper, not less than two years." Other than the wholly

insufficient objection that the court erred "in giving Instructions 1, 2, 3, 4 and 5, in that said instructions do not properly declare the law of this case", Section 547.030 RSMO 1949, V.A.M.S.; 42 V.A.M.S. Supreme Court Rule 27.20; State v. Gaddy, Mo., 261 S.W.2d 65, 67, there was no objection to this instruction, and the statutes suggest the query whether there reasonably could be and whether the court could otherwise instruct the jury.

The failure to examine prospective jurors concerning their scruples against the death penalty, or the state's waiver of the disqualification, has generally been considered a matter favorable to the defendant and of which, therefore, he could not complain. State v. Gore, 292 Mo. 173, 237 S.W. 993; State v. Thompson, Mo., 289 S.W. 788. Of course, state's counsel should exercise the option, 50 C.J.S., Juries, § 275(e), page 1052, in good faith, and it is conceivable that abuse of the optional right might unfairly prejudice the defendant's right to a fair trial. State v. Ussery, 178 La. 593, 152 So. 302. But here, in view of the instruction and the court's limitation upon the questioning after the state's counsel waived the claim of the death penalty, it may not be said that the trial court so abused its discretion in conducting the voir dire examination that the appellant's right to a fair trial was so unjustly infringed that he is entitled to a new trial. State v. Boyer, 232 Mo. 267, 134 S.W. 542; State v. Clymer, Mo., 159 S.W.2d 808; State v. Gore, supra.

There is no error upon the transcript and the judgment is therefore affirmed.

WESTHUES, and BOHLING, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, Acting P. J., and STONE and DEW, Special Judges, concur.