THE STATE v. A. R. JACOBSON, Appellant.—152 S. W. (2d) 1061.

Division Two, June 10, 1941.

Rehearing Denied, July 25, 1941.

*Homer A. Cope, Cope & Hadsell, Walter A. Raymond* and *Arthur L. Ross* for appellant.

*Roy McKittrick*, Attorney General, and *Tyre W. Burton*, Assistant Attorney General, for respondent.

260

LEEDY, J.—This case, in which appellant was convicted of forgery, originated in the Circuit Court of Lawrence County. At the September, 1938, term thereof, he was tried and the jury was unable to reach a verdict. At the January Term, 1940, defendant's application for a change of venue ▮▮▮ was sustained, and the venue awarded to Newton, a county in the same judicial circuit. A trial in the latter county at the June, 1940, term resulted in a verdict finding defendant guilty and assessing his punishment at a term of five years in the penitentiary. After an unavailing motion for a new trial, sentence was pronounced and judgment entered in conformity with the verdict, and he appealed.

At the time the case was reached for oral argument, defendant had filed no brief, although the State's brief was on file, as well as its motion to dismiss the appeal. The motion to dismiss is based upon the fact that on January 7, 1941, pending the appeal, or, more accurately, during the pendency of the appeal [State v. Huhn, 346 Mo. 695, 142 S. W. (2d) 1064], and while defendant was incarcerated under the judgment, he was granted an unconditional pardon by the Governor; the State's contention being that, by accepting the pardon, defendant has waived his right of appeal. Defendant requested, and was granted leave to file a brief, and the case was submitted accordingly. Within the time limited, he filed his brief, as well as a motion for leave to file certain exhibits, which are said to constitute newly discovered evidence, and upon which the Board of Probation and Parole recommended, and the Governor issued, the pardon.

I. The State's motion to dismiss presents a case of first impression in this jurisdiction. In fact, I have been unable to find a reported case elsewhere involving facts substantially parallel to those in the case at bar. It seems Oklahoma has dealt frequently with the general question, and, so far as I am able to discover, there are more decisions touching it in that state than in all the others combined. In Bean v. State (Okla. Crim.), 208 Pac. 834, Foster v. State (Okla. Crim.), 252 Pac. 450, Stout v. State (Okla. Crim.),

258 Pac. 1054, and Nicholson v. State (Okla. Crim.), 100 Pac. (2d) 896, it appears that on appeal the defendant interposed a pardon, and, *on his motion,* the appeal was dismissed. The most extreme statement of the rule in relation to the effect of a pardon pending an appeal is found in 20 R. C. L., sec. 45, p. 560, as follows: "Where an appeal is taken and, pending appeal, a pardon is granted and accepted, the appellant thereby waives all his rights upon the appeal, and when brought to the attention of the appellate court the appeal will be dismissed." This would seem to be direct authority in support of the State's position. But, like each of the foregoing Oklahoma cases, the supporting cases cited in the footnotes disclose that in every instance, save one, the pardon was interposed in the appellate court *by the defendant.* [People v. Marsh, 125 Mich. 410, 84 N. W. 472, 84 Am. St. Rep. 584, 51 L. R. A. 461; Gilmore v. State, 3 Okla. Crim. 639, 108 Pac. 416, 139 Am. St. Rep. 981; State v. Goddard, 69 Ore. 73, 133 Pac. 90, 138 Pac. 243, Ann. Cas. 1916A, 146.] The Goddard case, supra, is the exception noted, and there the state moved to dismiss the appeal, and was overruled for the reason defendant was not shown to have accepted the terms of a parole granted by the judgment of conviction. [See, also, annotation to Brooks v. State (Ariz.), 78 Pac. (2d) 498, 117 A. L. R. 925.] These observations are not to be understood as indicating a view that a pardon granted pending an appeal may not be invoked by the State as the foundation of a motion to dismiss in a proper case.

In Lime v. Blagg, 345 Mo. 1, 131 S. W. (2d) 582, the court en banc gave approval to definitions of the term "pardon," as follows: "A pardon, as defined in 20 R. C. L., sec. 1, p. 521, is 'a declaration on record by the chief magistrate of a state or country that a person named is relieved from the legal consequences of a specific crime;' or, as stated in 46 C. J., sec. 1, p. 1181, 'a pardon is an act of grace proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed.'" Moreover, "as the very essence of a pardon is forgiveness or remission of penalty, *a pardon implies guilt.*" [46 C. J., sec. 32, p. 1193.] A pardon *"carries an imputation of guilt; acceptance a confession of it."* [20 R. C. L., sec. 4, p. 523.] (Italics ours.) A pardon "affirms the verdict and disaffirms it not." [Searle v. Williams, Hob. 288, 293.] These definitions and connotations point to the reason for the rule announced by the text. Accordingly, it has been held that a party may not accept a benefit based on the legality of a judgment, and thereafter be heard to complain that the judgment is erroneous. He may not so attack the judgment because by asking and accepting executive clemency he said, in effect, that he was rightly convicted. He may not admit guilt to escape imprisonment, and at the same time protest innocence to avoid payment of fine and costs.

[Manlove v. The State, 153 Ind. 80; 2 Ency. Pl. & Pr. 173-182, and cases cited.] But see Eighmy v. Peo., 78 N. Y. 330, holding the fact that the accused had received a pardon would not authorize the dismissal of his writ of error because injury may be presumed from the judgment until reversed, as the infamy and discredit to which he is subjected by it will remain.

Do the facts of the instant case call for the application of the principle that the acceptance of a pardon amounts to a waiver of the defendant's rights on appeal? The instrument evidencing the pardon issued by the Governor (the deed or charter of pardon, as it is sometimes called) recites on its face that it was granted "Upon the attached recommendation of the Board of Probation and Parole, *and because of the fact that I am convinced that this man is not guilty. . . ."* (Italics ours.) We need not pause to determine the legal effect of the italicized language. It is sufficient to say that it would be harsh and ironical to imply a confession of guilt from the fact of acceptance of such a pardon. It is sometimes the case that the only redress open to an innocent man is through a pardon. Here the Governor deemed defendant a fit subject for executive clemency because he thought him not guilty. There is no inconsistency whatever in the defendant accepting such a pardon and at the same time denying his guilt. For these reasons, a distinction may be drawn between the ordinary pardon, which is governed by the general rules hereinabove noted, and one where it affirmativly appears to have been granted because the Governor was satisfied of the innocence of the accused. As was said in State v. Alexander, 76 N. C. 231 (where it was contended that the object was not to pardon a defendant while he is making a defense, nor until he surrenders and begs for mercy), "But it is not always true that the defendant ought to be expected to surrender and beg for *mercy*. There are cases where he has been improperly convicted and asks not for *mercy* but for *justice*."

As to the proposition that the questions involved have been rendered moot by reason of the pardon, it may be said that the situation is not wholly unlike that presented where a defendant has served his sentence before the determination of his appeal. The weight of authority seems to be that this makes no difference, and does not affect his right to prosecute the appeal. [State ex rel. Lopez v. Killigrcw, 202 Ind. 397, 174 N. E. 808; Roby v. State, 96 Wis. 667, 71 N. W. 1046; Johnson v. State, 172 Ala. 424, 55 So. 226, Ann. Cas. 1913E, 296.] Such procedure accords with our own practice, as is common knowledge. [State v. Smiley, 98 Mo. 605, 12 S. W. 247.]

Under the circumstances outlined, it seems clear that an accused is entitled to an opportunity, in the same judicial proceeding, to remove the discredit and stigma flowing from the judgment of conviction, notwithstanding the conviction may no longer be regarded

as subsisting. The .fact that he was convicted remains. In this connection it may not be amiss to observe that should defendant ever be so unfortunate as to be again charged with a crime punishable by imprisonment in the penitentiary, he would, upon conviction, be subject to the more severe penalties prescribed by our habitual criminal statute. [Sec. 4461, R. S. '29, sec. 4461, Mo. Stat. Ann., p. 3063.] By its very terms it is made applicable to subsequent offenders who shall have been previously "discharged, either *upon pardon,* or upon compliance with the sentence." (Italics ours.) There is still a substantial element of controversy existing, and the State's motion to dismiss should be overruled. It is so ordered.

II. Defendant has lodged with the clerk a sheaf of documents, perhaps several hundred in number, purporting to be photostatic copies of letters, bulletins, affidavits, medical and hospital reports, detective agency reports, notes, chattel mortgages, etc., which, it is alleged, represent the showing upon which the pardon was issued, and conclusively demonstrate defendant is not guilty of the charge of which he was convicted. He asks leave to file the same as exhibits, and that they be considered on appeal as newly discovered evidence. Furthermore, that as the State appended to its motion to dismiss a copy of the minutes of the Board of Probation and Parole recommending a pardon together with a copy of the pardon, defendant contends the State thereby consented that said "newly discovered evidence" may be so considered. There is nothing in the latter contention. In the first place, the board merely found, and reported to the Governor, that "Evidence has now been produced which *indicates* that Jacobson *may not* be guilty." (Italics ours.) The nature and extent of that evidence is not disclosed by the minutes of the board which accompany the State's motion. Even assuming that this court might be authorized to consider newly discovered evidence on appeal, by no stretch of the imagination can it be said that the State, by making reference to the findings of the board, and producing a copy of the pardon, has consented that the mass of unauthenticated, hearsay documentary evidence now tendered may be so considered. So much for the matter of consent.

What defendant is really seeking is a trial de novo in this court. Citation of authority is hardly necessary in support of the rule that, "The appellate court ordinarily can neither hear additional proofs nor receive or accept affidavits not considered below." [24 C. J. S., Criminal Law, sec. 1848.] There is nothing in the cases cited by defendant in support of the novel proposition he is urging which runs counter to this general rule. The main case relied on by him is that of Dulaney v. Buffum, 173 Mo. 1, 73 S. W. 125. It merely holds that a respondent may obtain the dismissal of an appeal by filing in the appellate court a release which has been executed by appellant subsequent to the appeal, and which would operate as a bar to a

further prosecution of the suit. The court was of the opinion there is no difference in principle in that practice and that obtaining in the case of a discharge in bankruptcy after an appeal, where it is held to be proper for the bankrupt to avail himself thereof by filing the same in the proceeding pending in the appellate court. [Haggerty v. Morrison, 59 Mo. 324; Marx v. Hart, 166 Mo. 503, 66 S. W. 260; Miller v. Collins, 328 Mo. 313, 40 S. W. (2d) 1062.] "The theory upon which this class of cases rests is, that where a cause has been settled or finally disposed of after an appeal has been taken, that fact, as before stated, cannot appear in the record; but in the absence of an agreement of parties, such fact must be called to the attention of this court either by a proper plea or some appropriate motion, and supported by competent evidence. The books are full of cases holding that this practice is proper in all cases where matters in litigation have been disposed of either by the parties themselves or by operation of law, but not admitted in this court." [Miller v. Assurance Co., 233 Mo. 91, 134 S. W. 1003.]

State ex rel. Gaines v. Canada, 344 Mo. 1238, 131 S. W. (2d) 217, was an exception to the general rule that the province of an appellate court is only to inquire whether a judgment when rendered was erroneous. But even in that case the court en banc declined to consider a resolution of the Board of Curators adopted subsequent to the appeal, saying, "We are not aware of any rule of procedure under which it would be competent for us to give consideration to the resolution, and none has been suggested. It is wholly extraneous to the record, and must be disregarded." The additional proofs tendered in this case form no part of the record of the proceedings. The pardoning power has intervened to prevent any miscarriage of justice—if it be regarded as such, and on this point we express no opinion. In this situation we would not be authorized to consider the additional proofs, even if it were competent to present newly discovered evidence in this court in the first instance.

III. This brings us to a consideration of the merits of the case. The matter of the so-called newly discovered evidence having been eliminated, we are left with only two points which have been briefed and urged as grounds for reversal. No point is made touching the sufficiency of the evidence to support the verdict, and it is therefore unnecessary to state the facts in detail. The evidence warranted the finding that appellant, a stranger in the community, represented himself to the First National Bank of Mt. Vernon to be one W. E. Brown, and that he lived on the "Gray" farm near that place, and needed a small sum of money for funeral expenses for his son who had died suddenly. Upon being identified as "W. E. Brown," and under the aforesaid representations, he was permitted to borrow the sum of $42.50, by giving a promissory note therefor,

secured by a chattel mortgage purporting to be on certain live stock. The note was proved to be a forgery, and defendant was identified as the forger. There was evidence tending to show other instances in which defendant had forged notes under other names in similar circumstances. There was also evidence to the effect that defendant admitted his guilt to the officers after his arrest. The defense was an alibi, with which was coupled the testimony of a handwriting expert, and that of character witnesses who testified to defendant's good reputation for truth and veracity.

IV. The first assignment is that the verdict is fatally defective in that it "is insufficient in form and not responsive to the charge." It reads as follows:

"We, the Jury, find the defendant guilty as charged and assess his punishment at five (5) years in the State penitentiary.

(Signed) R. C. Mitchell, Foreman."

The complaint is that the information charged two offenses (in the first count, that of forging the note in question; and in the second count with uttering said forged note), and that "the verdict merely finds defendant guilty of one such crime without pointing out or specifying which one." While the record fails to show a formal entry of dismissal as to the second count, the contention made overlooks the fact that the instructions authorized a conviction of only one offense, namely, that of forgery; the effect being to work an abandonment of the second count, although not dismissed of record. Therefore, it is clear that the verdict, general in form, was responsive to the only count submitted, the first. In State v. Lovitt, 243 Mo. 510, 147 S. W. 484, this court in determining the sufficiency of a verdict under somewhat similar facts, said: "In determining the sufficiency of a verdict, the controlling object is to learn the intent of the jury; and, if such intent may be ascertained and the verdict made definite and certain by reference to the pleadings and instructions, it will be sustained, 'and all reasonable presumptions are indulged to sustain the verdict, and that the jury has found all the facts necessary to support it.' [State v. Bohle, 182 Mo. l. c. 68, 81 S. W. 179; Miller v. St. Louis Hospital, 73 Mo. 242; 22 Am. & Eng. Encyc. Pl. & Pr. 955 et seq.; 29 Am. & Eng. Encyc. of Law, 1017.]"

The court having limited the consideration of the jury by the instructions under which the case was submitted to the count charging forgery, and the jury having found defendant "guilty as charged," and there being at that stage of the proceedings only one charge, no difficulty is encountered in determining whether all of the jurors agreed in their finding as to the particular crime of which defendant was guilty. In this situation the verdict must be held sufficient.

. V. The next ground of complaint relates to the conduct of one of the State's witnesses, the Cashier of the First National Bank of Mt. Ver-

non, as to whom the motion for a new trial charges the court erred in permitting said witness "to leave the witness stand and to present a discourse and argument to the jury under the guise of an answer to a question propounded by the prosecuting attorney, as well as to make a demonstration in attempting to show a similarity in the handwriting of the signatures [on certain of the State's exhibits] ; such conduct . . . being highly prejudicial to this defendant in that the testimony of said witness amounted to mere conclusion and invaded the province of the jury and rendered said evidence incompetent, immaterial and irrelevant." The offending conduct and demeanor is not set out in, nor definitely identified or pointed out by the brief. The State suggests that the point is not preserved for review because no exceptions were saved. The defendant counters with the proposition that the following objection was sufficient, "We object to a discourse by this witness and a general statement as to the circumstances, because it is not responsive to the question." But it will be observed that such is not the reason now urged, and this alone· is fatal. The witness was merely demonstrating the similarity between admittedly genuine specimens of defendant's handwriting and the note in question. In matters of this kind the trial court has wide discretion, and unless that discretion is abused, we are not authorized to interfere. It must be remembered, too, that allegations of motions for new trial do not prove themselves. After a careful reading of all of the testimony of the witness in question, we find nothing whereon to predicate the error assigned.

VI. Having determined there was no reversible error committed, the question arises as to the disposition to be made of the case, in view of the pardon. In State v. McO'Blenis, 21 Mo. 272, it was said, "As to the matter of the pardon, it is evident that, after a judgment for .costs, they cannot be remitted by pardon. Costs for which judgment has been given, are not remitted by a pardon of the offense, subsequent to the judgment, because there was an interest vested in private persons. [Cro. Car. 9 and 199; Duncan v. Commonwealth, 4 S. & Raw. 451; Playford v. The Commonwealth, 4 Barr. 144.]" Such is the general rule in other jurisdictions. [See 46 C. J., p. 1195.] There is authority for the proposition that usually if one in possession of a pardon fails to plead it, and puts himself upon his trial, he has waived the advantage of such pardon. [United States v. Wilson, 7 Pet. 150, 8 L. Ed. 640; People v. Marsh, 125 Mich. 410, 84 N. W. 472, 51 L. R. A. 461, 84 Am. St. Rep. 584; 4 Black Com. 402; State ex rel. v. Garrett, 135 Tenn. 617, 188 S. W. 58, L. R. A. 1917B, 567. See, also, Eighmy v. People, supra.] The State has not urged anything of the sort but the question raises itself, at least in the sense it is a proper subject of notice. But the circumstances of the case are so .unusual, and the very purpose of our holding ac-

cording defendant a right to review his conviction would be defeated should it be held that by exercising that right he will be deemed to have waived the benefit of his pardon. Accordingly, the judgment of the circuit court will be affirmed, and the defendant discharged. It is so ordered. All concur.