THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SAM V. CHIAPPA, Defendant-Appellant.

Second District   No. 75-311

Opinion filed October 14, 1977.

Ian H. Levin and Richard G. Schultz, both of Foran, Wiss & Schultz, of Chicago, for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

In a jury trial the defendant was found guilty of involuntary manslaughter (Ill. Rev. Stat. 1971, ch. 38, par. 9—3(a)) and was sentenced to serve 1 year to 1 year and 1 day in the Illinois State Penitentiary. On January 7, 1977, subsequent to the conviction of the defendant but prior to oral argument in this court, the defendant was pardoned by the Governor of the State of Illinois,

> "* * * of the said crime of involuntary manslaughter * * * of which he stands convicted and he is hereby acquitted and discharged of and from all further imprisonment and restored to all his rights of citizenship which may have been forfeited by his conviction."

In this opinion we consider only two issues which are necessary to the determination of this appeal. The threshhold question is whether this appeal has been rendered moot due to the general pardon of the defendant. The second question, which is of a substantive nature, is whether the evidence presented to the jury in this case was sufficient to support a conviction of involuntary manslaughter.

There is an apparent conflict of authority in the various courts of the United States as to the effect of a pardon. No useful purpose would be served in citing the various cases. Briefly, however, some courts have held that a pardon not only relieves the punishment for the offense but blots out the existence of the guilt of the offender. Other courts have held that a general pardon merely forgives the offender for having committed the offense. Still other courts have said the acceptance of a pardon presupposes the guilt of the party pardoned. (See 59 Am. Jur. 2d *Pardon and Parole* §51 (1971).) We find no decision in Illinois as to the effect of a general pardon.

■■ In 1974 the question of the powers of the Parole and Pardon Board was submitted to the Attorney General of Illinois. The question related to the jurisdiction of the Court of Claims, which, under the prior provisions of section 8 of "An Act to create the Court of Claims * * *" (Ill. Rev. Stat. 1971, ch. 37, par. 439.8), could hear and determine claims which included cases "where the persons imprisoned prove their innocence of the crime for which they were imprisoned." This act was amended in 1973 to limit the court's jurisdiction in such cases to include only those cases "where the persons imprisoned shall receive a pardon from the governor stating that such pardon is issued on the ground of innocence of the crime for which they were imprisoned". (Ill. Rev. Stat. 1973, ch. 37, par. 439.8(c).) In response to this query the Attorney General concluded:

> "Whether a pardon is granted on the grounds of innocence, and whether, even if granted on that ground, the pardon order will

expressly so state, is solely a matter for determination by the Governor." (1974 Op. Att'y Gen. 128, 137.)

As an apparent result of that opinion, this court is advised that two forms of pardon are presently used by the Governor of this State, one based upon the innocence of the defendant and the other merely pardoning the defendant without reference to his innocence. It would thus appear that regardless of the conflict of authority as to the effect of a general pardon, at least in the State of Illinois the guilt of the defendant is absolved by a pardon only where the same states that it is based upon the innocence of the defendant. (For a similar analysis see *State v. Jacobson* (1941), 348 Mo. 258, 152 S.W.2d 1061.) We therefore adhere to the finding that a general pardon, as here, does not absolve the defendant from guilt but forgives him for having committed the offense. In the vernacular, such a pardon is an act of forgiveness, not forgetfulness. For this reason we hold that this appeal is not moot.

Having determined that the pardon herein does not render this appeal moot, we turn then to the substantive issue of whether sufficient evidence was introduced in this case to support a finding of guilt. At trial the following facts were introduced. At 9:30 p.m. on July 18, 1972, the defendant, a law enforcement officer, was responding to an emergency police call. He was driving southbound in his own automobile on Poplar Street, a well-traveled thoroughfare in Elmhurst, Illinois. The speed limit on that street was 25 m.p.h. Defendant was operating his 4-way emergency flashers and flashing his headlight highbeams on and off. Several witnesses observed the defendant's vehicle and testified at trial as to his rate of speed. The speed estimates by these witnesses were variously that defendant was driving rather fast, in excess of 25-30 m.p.h.; 40 m.p.h.; 35-45 m.p.h.; or 30-40 m.p.h. The defendant stated to the police that he was travelling at a speed of 35-45 m.p.h. A 4-way stop sign is posted at the intersection of Poplar Street and Church Street. Although there was testimony that there were two street lights at that intersection, one eyewitness characterized it as not being well lit. As defendant reached this intersection the decedent, a 15-year-old girl, was riding her bicycle, which had no front light, side reflectors or illuminating paint, eastbound on Church. Mr. John Tombergs was jogging on the sidewalk approximately 30-50 feet south of the intersection on the east side of Poplar and saw the decedent travel east at 10 m.p.h. through the stop sign on Poplar Street without stopping. The defendant stated to the police that he stopped abruptly for the stop sign at Church Street. A witness, Mr. Patrick McMinamen, saw defendant come to a stop at the sign but could not be certain if defendant came to a full stop. Another witness, Mr. Michael Hubney, saw defendant's brake lights briefly applied. Both of

these witnesses were some distance from the intersection. Mr. Tombergs, the sole eyewitness to the actual incident, was never asked by the prosecution whether the defendant's car came to a full stop at the sign. The defendant stated that after he stopped he accelerated into the intersection where he saw the decedent and swerved left to avoid her. The decedent's bicycle struck the defendant's car in the area of the right front skirt and as a result she was killed. After the collision the defendant's car apparently went out of control, struck a tree and crossed driveways and lawns on the east side of Poplar until it came to rest in some bushes. After the collision the defendant remained on the scene and cooperated with the investigating officers.

The defendant was indicted for reckless homicide on November 30, 1973. That indictment was nolle prossed by the State and he was again indicted on March 1, 1974, for involuntary manslaughter. The involuntary manslaughter and reckless homicide statute under which the defendant was prosecuted is found in section 9—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—3(a)) and provides:

> "A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

The act further goes on to state, in subsection (b), that if the defendant is prosecuted for involuntary manslaughter he may be found guilty of the included offense of reckless homicide.

■■■ The gravamen of the offense of involuntary manslaughter with a motor vehicle is criminal negligence, which must be reckless or wanton negligence "and of such a character as to show an utter disregard for the safety of others under circumstances likely to cause injury." (*People v. Crego* (1946), 395 Ill. 451, 458, 70 N.E.2d 578, 581.) It can thus be seen that before a guilty verdict of involuntary manslaughter in operating a motor vehicle can be allowed to stand, it must appear from the record that the defendant recklessly or wantonly collided with the bycicle herein without using those reasonable means at his command to prevent the accident. Driving a motor vehicle above the speed limit, here from 5 to 15 mph above the 25 mile limit for this roadway, does not in and of itself constitute criminal negligence or wilful and wanton conduct in the absence of aggravating factors. (*People v. Potter* (1955), 5 Ill. 2d 365, 125 N.E.2d 510.) As the court observed in reversing a conviction for reckless homicide:

> "A review of the evidence in this case leads to the conclusion that the reckless conduct of the defendant, if any, must rest upon his

driving in excess of the speed limit." (5 Ill. 2d 365, 371, 125 N.E.2d 510, 513.)

In that case the defendant was driving a CTA bus south on Wentworth Avenue at 1:20 in the morning. At the intersection of Wentworth with 66th Street, there being no stop light or stop sign at either street, an automobile entered the intersection at or near the same time the bus did and a collision occurred which fatally injured a passenger in the automobile. The testimony indicated that the bus driver was actually driving at a speed estimated by witnesses to be from 25-50 mph. The supreme court, in reversing, stated that not only was speed in excess of the limit above insufficient to constitute criminal negligence or wilful and wanton misconduct, but also that the failure of the bus driver to anticipate the actions of the automobile driver was not reckless, per se. The same may be said of the case before us. While the defendant was in fact exceeding the speed limit, his headlights were flashing up and down, his emergency flashers were operating and it was a poorly lighted intersection. Not unlike the automobile in *Potter*, the 15-year-old girl entered the intersection without stopping, at a speed of 10 mph and with no illumination or reflectors whatsoever on her bicycle.

The additional element of the alleged violation of the stop sign by the defendant, which has been raised by the People, does not impress us as constituting reckless conduct by the defendant. The eyewitness testimony shows that the defendant did stop, or at least slowed down, prior to entering the intersection. This cannot be said to show a reckless disregard for the safety of others. Moreover, it is undisputed that the defendant was a law enforcement officer responding to an emergency call at the time of this tragic incident.

■■ After a review of the entire record we cannot state that the defendant was more than negligent in the civil sense, if that. In such a case, where the acts are attributable to either an innocent or a criminal cause, the innocent hypothesis will be adopted, and we so adopt it. (See *People v. Potter; People v. Lynn* (1943), 385 Ill. 165, 52 N.E.2d 166.) Under the circumstances present here, we find that the verdict of the jury was against the manifest weight of the evidence. Accordingly, we will not consider the other contentions raised by the defendant. For the reasons stated above the conviction of the defendant is reversed.

Reversed.

SEIDENFELD and TOWNLEY, JJ., concur.