**Johnny Lee WILSON, Plaintiff,**

v.

**LAWRENCE COUNTY, MISSOURI, et al., Defendants.**

**No. 96–5026–CV–SW–1.**

United States District Court,
W.D. Missouri,
Southwestern Division.

Sept. 16, 1997.

William G. Haynes, S. Eric Steinle, and John C. Frieden, Topeka, KS, for plaintiff.

Barry E. Warren, Wallace, Saunders, Kansas City, MO, Derrick A. Pearce, Wallace, Saunders, Overland Park, KS, for defendants.

## ORDER

WHIPPLE, District Judge.

Pending before the Court are Defendants' nearly identical motions for dismissal under Federal Rule of Civil Procedure 12(b)(6) for Plaintiff Johnny Lee Wilson's failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment

under Rule 56. Defendants seek dismissal or summary judgment on Wilson's action brought under 42 U.S.C. § 1983, which seeks money damages against the defendants for wrongfully arresting and incarcerating him in violation of his constitutional rights. For the reasons stated below, Defendants' motions for summary judgment under Rule 56 are GRANTED.

## I. FACTUAL BACKGROUND

In 1987, Johnny Lee Wilson submitted an *Alford* plea [1] and was convicted in Missouri state court for first-degree murder. He was sentenced to life imprisonment without eligibility for probation or parole. On September 29, 1995, Governor Mel Carnahan issued a full pardon to Wilson. The pardon reads as follows:

I, MEL CARNAHAN, GOVERNOR OF THE STATE OF MISSOURI, have had presented to me a request for the pardoning of Johnny Lee Wilson, who was on the 30th day of April, 1987, by a judgment of the Circuit Court of Jasper County, sentenced for the crime of First Degree Murder. After examination of the application and the facts relevant thereto, and upon the recommendation of the Board of Probation and Parole, I hereby grant to Johnny Lee Wilson a full pardon from the above conviction. This pardon obliterates said conviction so that I hereby relieve Johnny Lee Wilson from the obligation to satisfy any part of the sentence for said conviction which may remain unsatisfied, restore to him all rights of citizenship forfeited by said conviction, and remove any legal disqualification, impediment or other legal disadvantage which may be a consequence of said conviction.

Pl.'s Ex. A. On the same day, Governor Carnahan also issued a separate statement, explaining his reasons for the pardon:

[J]ust as I have a responsibility to Missourians to see that criminals are placed

1. "An Alford plea allows a defendant to plead guilty and consent to imposition of a sentence even though he may continue to proclaim his innocence. In such circumstances, the court accepting the plea must determine that there is 'strong evidence of actual guilt.' *North Carolina* *v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970)." *Brownlow v. Groose,* 66 F.3d 997, 998 n. 2 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1049, 134 L.Ed.2d 194 (1996).

behind bars, I also have a responsibility to see that an innocent person is not punished for a crime he did not commit.

It is common for convicted criminals to make claims of innocence. In almost all of these cases, the claims of innocence are false. However, in this case, it is clear that Johnny Lee Wilson's claim is true.

To meet my responsibilities under the [Missouri] Constitution, this office has conducted an exhaustive investigation into the facts of this case. We have spent literally hundreds of hours re-examining the evidence in this case. We have reviewed all the transcripts and re-interviewed the key witnesses including the prosecutor and law enforcement officials involved in this case.

.    .    .    .    .

From this investigation, it is clear that Johnny Lee Wilson's confession is false and inaccurate. Furthermore, there is no evidence to corroborate or substantiate it. Quite to the contrary, there is significant evidence to indicate that it is false.

It is evident that the only facts this mentally retarded man knew about this hideous crime were the facts given to him by investigators who felt pressure to solve the case quickly. And virtually all the information Wilson himself tried to offer about the crime—in response to the investigators' questions—was inaccurate and inconsistent with the known facts.

In fact, the original motivation for Wilson's arrest has been removed. The person who originally accused Wilson of committing the crime has recanted his accusation and now admits that the statement he made to the police was untrue.

As long as I am governor, we will strive to lock away violent criminals so they won't be in our schools and won't be in our neighborhoods.

But in the case of Johnny Lee Wilson, we have locked up an innocent, retarded man who is not guilty of the crime of which he was accused.

Therefore, as governor of the State of Missouri, I am issuing a pardon to Johnny Lee Wilson.

In addition to the recommendation from my Chief Counsel, the Probation and Parole Board has also recommended that I take this action.

Pl.'s Ex. B, Statement from Governor Carnahan Re: Johnny Lee Wilson (Sept. 29, 1995).

Following his pardon, Wilson was released from confinement. Six months later, Wilson filed this action against Defendant Lawrence County and various named and unnamed law enforcement officers for having "conducted a biased investigation by intimidating and coercing witnesses and by preparing investigative reports which were false and misleading or prepared in reckless disregard for the truth," "provid[ing] information, knowing it was false and misleading or prepared in reckless disregard for the truth or falsity of the information, to the prosecution and the court in an effort to obtain Wilson's conviction at any apparent cost while concealing their own wrongful acts and omissions," all of which resulted in Wilson's submission of an *Alford* plea to avoid the death penalty and his subsequent conviction and imprisonment. Compl. at 2. Based on the defendants' alleged wrongful conduct, Wilson filed claims under 42 U.S.C. § 1983 and state tort law. Defendants' motions attack only the federal claim under § 1983, not the state claims.

## II.  STANDARD FOR SUMMARY JUDGMENT

Defendants move for dismissal under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A court must treat a party's Rule 12(b)(6) motion as a motion for summary judgment under Rule 56 when the parties present matters outside the pleadings. *Gibb v. Scott,* 958 F.2d 814, 816 (8th Cir.1992). Most courts view "matters outside the pleading" as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings. *Id.* A court must give the parties adequate notice of its intent to convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment and an opportunity to provide further materials unless the nonmoving party had an adequate opportunity to respond to the motion and

material facts were neither disputed nor missing from the record.. *Id.* In this case, the Court relied on Wilson's materials that he offered outside the pleadings. Consequently, the Court will respond to Defendants' arguments as arguments for summary judgment. All parties had adequate notice that Defendants' motion would be treated as a motion for summary judgment and had an opportunity to respond because Defendant submitted alternative motions to the Court—one for dismissal under Rule 12(b)(6) and one for summary judgment under Rule 56. Additionally, the parties agree to not dispute the material facts of the case.

Summary judgment is appropriate under Rule 56 if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). The facts and inferences from those facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–90, 106 S.Ct. 1348, 1355–58, 89 L.Ed.2d 538 (1986). In this case, the disputed issue is one solely of law.

### III. 42 U.S.C. § 1983

Wilson's federal claim, alleging that Defendants violated his constitutional rights, is brought under 42 U.S.C. § 1983. Defendants argue that Wilson's claim is not cognizable under § 1983. An analysis of the language and judicial construction of § 1983 is essential to resolve the dispute.

In relevant part, § 1983 reads as follows: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

The plain language of § 1983 authorizes plaintiffs to bring any claims against state actors for violation of any federal law. It does not expressly limit the type of federal claim that a plaintiff is authorized to bring.

The United States Supreme Court, however, has read § 1983 in relation to other civil rights statutes and has concluded that some claims are not cognizable under § 1983. For example, in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the United States Supreme Court held that the federal habeas corpus statute, 28 U.S.C. § 2254, is the exclusive remedy for a state prisoner to challenge the fact or duration of his confinement. *See Preiser,* 411 U.S. at 499, 93 S.Ct. at 1841. Such a claim for injunctive relief is not cognizable under § 1983. *Id.*

Following *Preiser,* the Supreme Court again limited the realm of prisoners' claims that are cognizable under § 1983. In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), Roy Heck was serving a term of imprisonment after having been convicted of manslaughter in state court. *Heck,* 512 U.S. at 478, 114 S.Ct. at 2368. While his appeal of the conviction was pending, Heck filed a lawsuit in federal district court under § 1983, naming a number of state officials as defendants. Heck alleged that the state officials' conduct during his arrest and trial violated the Constitution. He sought compensatory and punitive monetary damages, but not injunctive relief as had the claimant in *Preiser. Id.* Paralleling its conclusion in *Preiser,* the Supreme Court held that damages claims that call into question the lawfulness of a conviction or of confinement are not cognizable under § 1983. *See Heck,* 512 U.S. at 483, 114 S.Ct. at 2370 ("The issue with respect to monetary damages challenging conviction is ... whether the claim is cognizable under § 1983 at all. We conclude that it is not.").

In reaching its conclusion in *Heck,* the Supreme Court looked to the common law of torts, specifically to the common-law cause of action for malicious prosecution. *See Heck,* 512 U.S. at 484–86, 114 S.Ct. at 2372. In an action for malicious prosecution,

the claimant must prove that the prior criminal proceeding terminated in his favor. *Id.* This requirement honors two important judicial policies: (1) finality of judgments and (2) the policy against the creation of two conflicting resolutions arising out of the same or identical transactions. *Id.* The Supreme Court found that those same policies undergirded its precedent that thwarted the expansion of collateral attacks on criminal judgments. *Id.* Therefore, based on the policies of consistency and finality, the Court concluded that civil tort actions are not appropriate vehicles for challenging the validity of an outstanding criminal judgment and, therefore, held that no such civil action was cognizable under § 1983. *Heck,* 512 U.S. at 486, 114 S.Ct. at 2372 ("We think that the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement . . ."). Accordingly, the Supreme Court held that a § 1983 action seeking monetary relief for a wrongful conviction is cognizable only where the underlying conviction or sentence has been declared invalid in a proceeding independent of the § 1983 action. *See id.* The Court elaborated as follows:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck,* 512 U.S. at 486–87, 114 S.Ct. at 2373.

■ In this case, the parties do not dispute that a judgment in favor of Wilson would necessarily imply the invalidity of his conviction. Instead, their arguments focus on whether Wilson's conviction has been declared invalid in a proceeding independent of his § 1983 action. Wilson contends that proof of his pardon is tantamount to proof that his "conviction or sentence has been . . . expunged by executive order." Defendants disagree. The resolution of this dispute hinges on how Missouri law delimits the effect of a pardon. *See, e.g., Snyder v. City of Alexandria,* 870 F.Supp. 672, 679 (E.D.Va. 1994) ("The question, therefore, is whether executive pardons or judicial expungement orders are also appropriate means by which a wrongly convicted person can establish innocence. Answering this question requires an examination of Virginia law regarding pardons and expungements."). If the Missouri Constitution's pardoning provision effectively empowers the governor to invalidate a conviction, then such an executive pardon "expunges" the conviction within the meaning of *Heck* and opens the door to a § 1983 action. A pardon will be deemed to "invalidate" or "expunge" a conviction, however, only if the effect of the pardon is to support the finality of judgments and to eliminate the risk of conflicting resolutions arising out of the same transaction—the underlying policies which gave rise to the Supreme Court's ruling in *Heck.*

## IV. THE GOVERNOR'S PARDONING POWER

■ The governor's power to grant executive clemency stems from two provisions of the Missouri Constitution. First, Article IV, Section 1 states that "The supreme executive power shall be vested in the governor." Second, Article IV, Section 7 reads as follows:

> The governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, upon such

conditions and with such restrictions and limitations as he may deem proper, subject to provisions of law as to the manner of applying for pardons. The power to pardon shall not include the power to parole. The language of Article IV, Section 7 does not constrain the governor's pardoning power in any way relevant to Wilson's case. Other than the treason, impeachment, and parole limitations, Section 7 entrusts the governor with absolute discretion to grant pardons for reasons he deems proper. *See* Mo. Const. Art. IV, Sec. 7; *see also Whitaker v. State,* 451 S.W.2d 11, 15 (Mo.1970) (en banc) ("The exercise of the power of pardon lies in the uncontrolled discretion of the governor ..."); *Guastello v. Dep't of Liquor Control,* 536 S.W.2d 21, 25 (Mo.1976) (en banc) (stating that the constitution authorizes the court only to determine the legal effect of the pardon, not to review the governor's decision to grant a pardon in the first place). Specifically, it does not prohibit the governor from pardoning a convict for innocence, as Governor Carnahan purported to do in his public statement explaining his reasoning for pardoning Wilson. Similarly, however, Article IV, Section 7 does not delineate the legal effect of a governor's pardon and does not state whether the legal effect varies depending on the governor's reasoning for granting the pardon. Section 7's silence on this matter leads the Court to look to the Missouri courts' interpretation of the effect of a gubernatorial pardon and to other provisions of the constitution which define the governor's powers and limitations.

### A. Missouri Courts' Interpretation of the Scope of the Pardoning Power and the Effect of a Pardon

█ █ Neither the Eighth Circuit nor any Missouri court has had the opportunity to decide whether a pardon issued by a Missouri governor, in effect, invalidates a conviction within the meaning of *Heck v. Humphrey.* This issue presents a mixed question of state and federal law. The pardon's effect on a conviction is a question of state law. *See Snyder,* 870 F.Supp. at 679. On the other hand, federal law governs whether that pardon's effect, as interpreted by state law, is sufficient to invalidate a conviction within

the meaning of *Heck.* Because state law is operative in resolving this issue, "[w]e must do our best to determine what state law is under the state decisions. .... [W]e must judicially 'estimate' what the [Missouri] Supreme Court would do if confronted with the same issue." *Heeney v. Miner,* 421 F.2d 434, 439 (8th Cir.1970) (citations omitted) (diversity jurisdiction). In making this prediction, the court "may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data." *Ventura v. Titan Sports, Inc.,* 65 F.3d 725, 729 (8th Cir.1995) (diversity jurisdiction), *cert. denied,* ⸺ U.S. ⸺, 116 S.Ct. 1268, 134 L.Ed.2d 215 (1996).

Although no courts interpreting Missouri law have directly addressed the *Heck v. Humphrey* issue, they have interpreted the effect of a gubernatorial pardon in other contexts. For example, in *Guastello v. Department of Liquor Control,* 536 S.W.2d 21 (Mo.1976) (en banc), the Missouri statute governing liquor licenses listed factors which disqualified an applicant for a license: (1) lack of good moral character and (2) a conviction under a liquor law. *Id.* at 22. Joseph Guastello had been convicted under a liquor law but the governor had pardoned him. Nonetheless, the Supervisor of Liquor Control of Missouri denied Guastello's application for a license. The parties stipulated that the Supervisor's denial of the license was based solely on the conviction, not lack of good moral character. *Id.* Consequently, the Missouri Supreme Court set out to determine whether a gubernatorial pardon, issued under Article IV, Section 7, had the effect of restoring the claimant's ability to attain a liquor license. To resolve the issue, the court noted that three views exist relating to the effect of a pardon: (1) that conviction and guilt are both wiped out and obliterated; (2) that the fact of conviction is obliterated but the guilt remains; and (3) that neither the fact of conviction nor the guilt are obliterated—only the punishment *Id.* at 23. The court adopted the second view: "[W]e adopt View # 2 as being the most compatible, of the three alternatives, with the power of an executive to pardon and the realities of life." *Id.* at 24. Because the Supervisor did not

base his denial of Guastello's application on lack of good moral character, the fact that Guastello's guilt remained was immaterial. Therefore, the court held that the governor's pardon restored Guastello's eligibility to apply for a liquor license because it obliterated the conviction. *See id.*

■ Accordingly, under Missouri law, a governor is empowered to grant a pardon for any reason, including for innocence, if he chooses. *See Guastello,* 536 S.W.2d at 25 (stating that the constitution authorizes the court to determine only the legal effect of the pardon, not to review the governor's decision to grant a pardon). However, the effect of the pardon—over which the governor has no control—is to obliterate the conviction while leaving the guilt intact. *Id.* at 24.

■ The Missouri Supreme Court's judgment that a gubernatorial pardon leaves an individual's guilt intact excludes such a pardon from operating as an executive order expunging the conviction within the meaning of *Heck v. Humphrey.* As noted above, the United States Supreme Court's ruling that § 1983 civil tort actions are not appropriate vehicles for challenging the validity of an outstanding criminal judgment was rooted in the policies of consistency and finality. These policies are not served when a guilty person—although freed of his conviction—is authorized to file an action seeking monetary relief from state officials for contributing to his conviction and imprisonment. If the plaintiff won the lawsuit, an inconsistent outcome based on the same transaction would result. It is inconsistent to hold that a person who has been—and remains—adjudicated guilty of a crime may nonetheless recover damages for his wrongful conviction. Thus, because a pardon under Missouri law does not free the individual from the adjudicated guilt, the pardon does not invalidate the conviction within the meaning of *Heck v. Humphrey.*

Wilson argues, however, that a pardon for innocence has a different effect than a pardon for other reasons. He argues that a Missouri court, if faced with the issue, would hold that a pardon for innocence invalidates a conviction within the meaning of *Heck v. Humphrey.* Although the effect of the par-

don is a question of state law, the question of whether·a pardon invalidates a conviction within the meaning *Heck v. Humphrey* is a question of federal law. Thus, what Wilson must be arguing is that a pardon for innocence has the effect of View # 1, described above: that conviction and guilt are both wiped out and obliterated. *See Guastello,* 536 S.W.2d at 23. This is the only view by which a pardon would invalidate a conviction within the meaning of *Heck v. Humphrey* because it is the only view that overcomes the problem of inconsistency of outcomes. However, Wilson offers only minimal support for his argument.

Wilson relies heavily on *State v. Jacobson,* 348 Mo. 258, 152 S.W.2d 1061 (1941), apparently the only case in which the Missouri Supreme Court arguably relied on some distinction between pardons for innocence and pardons for other reasons or no express reason. In that case, A.R. Jacobson desired to pursue the direct appeal of his conviction even though the governor had already pardoned him. The deed of pardon expressly stated that the governor was "convinced that this man is not guilty." *Jacobson,* 152 S.W.2d at 1064. The State moved to dismiss Jacobson's appeal as moot because, by accepting the pardon, he had admitted his guilt and thereby waived his rights on appeal. The court permitted Jacobson to pursue his appeal, holding that, because the governor had expressly pardoned Jacobson for innocence, Jacobson's acceptance of the pardon did nor necessarily imply a confession of guilt. *Id.* at 1064.

For a number of reasons, *Jacobson* is not persuasive to show that a Missouri court would hold that Governor Carnahan's pardon and related official statement had the effect described in View # 1—that of wiping out and obliterating both Wilson's conviction and his guilt. In fact, the Court finds that *Jacobson* undermines Wilson's argument and supports the Court's conclusion that a Missouri court would espouse, View # 2 even if a governor explicitly opined that the pardoned person was innocent.

First, Jacobson's pardon materially differed from Wilson's. In *Jacobson,* the deed

of pardon issued by the governor expressly stated that the governor was convinced that Jacobson was innocent. In this case, Governor Carnahan issued a separate statement, apparently designed to promote community acceptance of his decision, to state that he believed Wilson was innocent. The statement of innocence was not contained in the deed of pardon itself. The fact that the governor omitted his opinion of innocence from the deed of pardon could lead a court to find that the opinion is inconsequential. *Cf., e.g., People v. Chiappa*, 53 Ill.App.3d 639, 11 Ill.Dec. 317, 318, 368 N.E.2d 925, 926 (1977) (indicating that only when the deed of pardon itself states that the pardon is for innocence will the convict be absolved of guilt and permitted to proceed with a direct appeal of his conviction) (citing *State v. Jacobson*).

Second, even if the omission were immaterial, there is little indication that the Missouri Supreme Court would today draw any distinctions among pardons based on the governor's opinion that an applicant is innocent. The Court is not convinced that the Missouri Supreme Court, if faced with the issue today, would limit *Jacobson* to instances in which the governor expressly stated that he believed that the applicant was innocent. The court in *Jacobson* explicitly declared that it "need not pause to determine the legal effect" of the governor's stated belief that Jacobson was innocent:

> The instrument evidencing the pardon issued by the Governor ... recites on its face that it was granted 'Upon the attached recommendation of the Board of Probation and Parole, *and because of the fact that I am convinced that this man is not guilty.*' (Italics ours). We need not pause to determine the legal effect of the italicized language.[2] It is sufficient to say that it would be harsh and ironical to imply

a confession of guilt from the fact of acceptance of such a pardon.

*Jacobson*, 152 S.W.2d at 1064. Consequently, it is plausible that the Missouri Supreme Court would permit an individual whom the governor pardoned for no express reason to pursue the direct appeal of his conviction. Additionally, the court plainly did not conclude that the governor's language had the legal effect of obliterating both the conviction and the guilt. Thus, *Jacobson* is not a strong basis for arguing that the Missouri Supreme Court would hold today that a pardon for innocence wipes out both the conviction and the guilt.

Third, and most importantly, the fact that the Missouri Supreme Court would distinguish a pardon for innocence to permit the claimant to appeal his conviction militates against Wilson's argument that a pardon for innocence obliterates both his conviction and his guilt. If a pardon for innocence obliterated both the conviction and the guilt, the pardon would have operated as an acquittal from the previous conviction and rendered Jacobson's appeal moot. The court did not find the appeal moot. Instead, it recognized that not all pardons are admissions of guilt and that, therefore, a claimant pardoned for innocence is not behaving inconsistently when he seeks an appeal to legally obliterate the guilt. In short, the court found that a convict's adjudicated guilt remains despite a pardon for innocence. Accordingly, contrary to Wilson's argument, *Jacobson* actually persuades the Court that a Missouri court would not hold that a pardon for innocence has the effect of obliterating both the conviction and the guilt. Consequently, the Court concludes that View # 2, adopted in *Guastello* defines the effect of a gubernatorial pardon, even if granted based on a finding of innocence. This conclusion leads inevitably to the judgment that, under Missouri law, a gubernato-

2. Despite the court's statement that it is not "determ[ing] the legal effect of the italicized language," the court gives the language a legal effect: that of permitting a pardoned person to have an appeal which he might not otherwise have. Thus, the court's statement disavowing any judgment regarding the legal effect of the governor's stated belief of Jacobson's innocence is somewhat in tension with the court's holding that Jacobson could appeal his conviction. Reasonably read, the court's statement must mean that the court was not determining whether a governor's express belief in the individual's innocence has any legal effect other than the effect of removing an inconsistency—the inconsistency of pursuing an appeal despite an admission of guilt—which would otherwise prevent a pardoned person from pursing an appeal of his conviction.

rial pardon does not invalidate a conviction within the meaning of *Heck v. Humphrey* because it does not erase the pardoned person's guilt and, therefore, does not overcome the problem of inconsistency of outcomes. *But see Snyder,* 870 F.Supp. at 685–86 (holding that a gubernatorial pardon under Virginia law obliterated the conviction and, therefore, invalidated the conviction within the meaning of *Heck v. Humphrey* ).

## B. Separation of Powers

██ Although the court in *Guastello* did not expressly invoke Missouri's constitutional provision apportioning governmental authority among the three branches, that provision and Missouri cases interpreting it strongly supports the court's conclusion that, "View # 2 [is] ... the most compatible, of the three alternatives, with the power of an executive to pardon ..." *Guastello,* 536 S.W.2d at 24. Missouri's provision for separation of powers is found at Article II, Section 1 of the Missouri constitution. It reads as follows:

The powers of government shall be divided onto three distinct departments—the legislative, executive, and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances this Constitution expressly directed or permitted.

Further, Article V, Section 1 states that the judicial power shall be vested in the courts. Under Missouri law, the quintessential power of the judiciary is the power to make final determinations of questions of law. *Asbury v. Lombardi,* 846 S.W.2d 196, 199–200 (Mo. 1993) (en banc). This power is non-delegable and rests exclusively with the judiciary. *Id.* Thus, while legislative or executive bodies may exercise quasi-judicial decision-making, final judicial review of those decisions remains constitutionally mandated. *Id.*

A conclusion that a governor's pardon eliminates both the fact of conviction and the adjudicated guilt would leave no remnant of the previous conviction. Accordingly, under the pardoning provision, the governor, in effect, would be empowered to make a final determination of a question of law—the guilt or innocence of an individual within Missouri's legal system. The pardon would obliterate the court's final judgment of guilt. The power of making final determinations of questions of law, however, cannot be delegated and remains exclusively with the court. Consequently, if faced with the issue, the Missouri Supreme Court would likely conclude that the obliteration of the court's judgment would violate Missouri's constitutional provision of separation of powers.

██ Neither the separation of powers provision nor the provision establishing the pardoning power, however, prevents the governor from gathering evidence in a case and satisfying himself that the candidate is innocent of the crime for which the court convicted him. The governor's evidence-gathering and decision, however, do not comply with any of the procedural rules constraining the courts. *See Whitaker v. State,* 451 S.W.2d 11, 15 (Mo.1970) (stating that the power of pardon is not restricted by the rules of evidence). Thus, the governor's judgment is different in kind than the court's adjudication. In a court proceeding, the fact-finder, basing its judgment only on admissible evidence, determines whether the prosecutor in a criminal case proved his case beyond a reasonable doubt. The governor is constrained by no rules of evidence and no standards of proof. Under both the state and federal legal system, criminal defendants have a constitutional right to a fair process, not to justice in the form of an objectively right outcome nor to mercy. *See Michael H. v. Gerald D.,* 491 U.S. 110, 147, 109 S.Ct. 2333, 2354, 105 L.Ed.2d 91 (1989) ("The point of procedural due process is to give the litigant a fair chance at prevailing, not to ensure a particular substantive outcome."). The pardoning power provides a safety-valve for the flaws in the court system. The governor may ignore exclusionary rules and may grant mercy or demand justice. Missouri courts have consistently recognized that a pardon is an act of mercy or justice, but is not an adjudication. *See e.g., Jacobson,* 152 S.W.2d at 1064 (indicating that a pardon may be an act of mercy or of justice but that it is

not sufficient to remove the adjudicated guilt); *Whitaker*, 451 S.W.2d at 15 (stating that, even though an official may gather evidence to convince himself that there was no guilt or that mistakes were made, a pardon "it is not a corrective judicial procedure to remedy a wrong" because a pardon does not involve a judicial process); *Lime v. Blagg*, 345 Mo. 1, 131 S.W.2d 583, 585 (1939) (en banc) (stating that a pardon is an act of grace); *State ex rel. Oliver v. Hunt*, 247 S.W.2d 969, 973 (Mo.1952) (en banc) (stating that a pardon is conceived in mercy and is said to be in derogation of law). This safety-valve, however, cannot supplant the court's judgment without violating Missouri's provision for separation of powers.

Notably, however, the separation of powers provision, Article II, Section 1, permits encroachment by one branch into the functions of the other if the constitution elsewhere expressly directs or permits it. *See* Mo. Const., Art. II, Sec. 1. Arguably, the pardoning provision could be construed as providing an exception to the strict division of powers. The Missouri courts, however, have not interpreted the pardoning provision in this way. *Guastello's* adoption of View # 2—the view that the court found the most compatible with the power of an executive to pardon—leaves the pardoned person's adjudicated guilt intact. In other words, it maintains a remnant of the court's judgment while still recognizing the governor's power to pardon. This holding balances the governor's exclusive power to pardon with the court's exclusive power to adjudicate guilt. Thus, the holding plainly suggests that the

pardoning provision must operate consistently with the separation of powers' provision, not in derogation of it.

In sum, the Missouri Supreme Court would likely hold that Missouri's constitutional provision mandating separation of powers prohibits the governor from completely obliterating the court's judgment of guilt. In other words, the Missouri Constitution forbids View # 1. Thus, a pardoned person remains guilty in the eyes of the court which adjudicated that guilt. The court's judgment is not invalidated. Under the *Heck v. Humphrey* standard, this remaining adjudicated-guilt prevents a pardoned person from bringing a § 1983 suit for wrongful conviction because it would risk an inconsistent outcome in which a guilty litigant obtains money damages for his wrongful conviction.[3]

## V. Supplemental State Law Claims

██ Pursuant to 28 U.S.C. § 1367, Wilson would like the Court to exercise supplemental jurisdiction over his two state claims: (1) malicious prosecution and (2) intentional infliction of emotional harm, Title 28 U.S.C. § 1367(c)(3), however, grants district courts discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Brousard–Norcross v. Augustana College Ass'n*, 935 F.2d 974, 979 (8th Cir.1991). Accordingly, because no federal question remains under 42 U.S.C. § 1983 and because there is no independent basis for subject matter jurisdiction over the remaining state claims, the Court is inclined to dismiss them without prejudice, which will

---

**3.** The Court's earlier conclusion—under *Heck*—and conclusion here—under the Missouri Constitution's provision for separation of powers—do not render a pardon ineffectual. First, the pardon removes some legal disqualifications which were a consequence of the conviction. In *Guastello*, for example, a gubernatorial pardon restored a person's eligibility for a liquor license. *Guastello*, 536 S.W.2d at 23–24. Second, the Court's interpretation of the Missouri Constitution does not prevent a pardoned person from ever pursuing a § 1983 claim. Instead, it requires a recognition of proper procedure. A § 1983 claim is not viable until the person pardoned under the Missouri Constitution succeeds on direct appeal. *See Jacobson*, 152 S.W.2d at 1064 (permitting a pardoned person to pursue a direct appeal of his conviction). Where, as here,

a direct appeal is inappropriate, *see Wilson v. State*, 813 S.W.2d 833, 848 (Mo.1991) (en banc) (explaining why direct appeal is inappropriate), Wilson could have collaterally attacked his conviction under Missouri's habeas corpus procedure or could have moved to withdraw his guilty plea instead of applying for a pardon. *See id.* (advising Wilson to petition for a writ of habeas corpus, to move to withdraw his guilty plea, or to apply for a pardon). If he were successful in either pursuit, his § 1983 claim would have been viable. *Heck*, 512 U.S. at 486–87, 114 S.Ct. at 2373 (stating that a § 1983 claim is viable where a conviction is declared invalid by a state tribunal authorized to make such determination). Instead, Wilson chose to apply for a pardon, which is not an appropriate proceeding to invalidate his conviction for purposes of § 1983.

permit Wilson to re-file them in state court. However, the Court recognizes that Wilson might encounter a procedural obstacle to re-filing if the statute of limitations has expired on his state claims. Consequently, the Court will permit the parties to address whether the Court should decline to exercise supplemental jurisdiction and therefore dismiss the remaining state claims under Rule 12(h)(3) for lack of subject matter jurisdiction.

## VI. ORDER

Based on the foregoing, it is hereby ORDERED that Defendants' motions for summary judgment on Plaintiff Johnny Lee Wilson's claim brought under 42 U.S.C. § 1983 is GRANTED. It is further

ORDERED that Johnny Lee Wilson shall show cause in writing within fifteen (15) days from the date of this Order why the Court should not dismiss his state claims under Rule 12(h)(3) for lack of subject matter jurisdiction. It is further

ORDERED that Defendants' shall respond to Wilson's submission within fifteen (15) days from the date of its filing.